652 A.2d 700

GALLIMORE MCDONALD, APPELLANT–APPELLANT, v.
STEVEN PINCHAK, RESPONDENT–RESPONDENT.

*Argued September 12, 1994—Decided January 25, 1995.*

*Matthew Astore,* Assistant Deputy Public Defender, argued the cause for appellant (*Susan L. Reisner,* Acting Public Defender, attorney; *Susan Remis Silver,* Deputy Public Defender, of counsel; *Ms. Silver, Susan R. Oxford* and *Patricia P. Perlmutter,* Assistant Deputies Public Defender, on the briefs).

*Madeleine W. Mansier,* Deputy Attorney General, argued the cause for respondent (*Deborah T. Poritz,* Attorney General of New Jersey, attorney; *Joseph L. Yannotti* and *Mary C. Jacobson,* Assistant Attorneys General, of counsel; *Dianne M. Moratti, Patrick DeAlmeida,* and *Deborah J. Gottlieb,* Deputy Attorneys General, on the briefs).

*Gallimore McDonald* submitted briefs *pro se.*

The opinion of the Court was delivered by

GARIBALDI, J.

In this appeal, as in *Jacobs v. Stephens,* 139 *N.J.* 212, 652 *A.*2d 712 (1994), also decided today, Gallimore McDonald, an inmate in a New Jersey State prison, contends that state action taken at his disciplinary hearing violated procedural due process and the "fairness and rightness" standard of New Jersey. Specifically, McDonald asserts that the investigating officer and the hearing officer failed to adhere to the Department of Corrections' own regulations by refusing his request both to call witnesses and to present evidence, and to confront and to cross-examine witnesses. The hearing officer, however, asserts that McDonald never asserted the right to call witnesses or to confront and to cross-examine

witnesses. McDonald also alleges that the record contains insufficient evidence for the hearing officer's finding of guilt.

In our decision today, we reaffirm the standards set forth in *Avant v. Clifford,* 67 *N.J.* 496, 341 *A.*2d 629 (1975), and in the Department of Correction (DOC) regulations promulgated in response thereto. However, we clarify and modify some of DOC's disciplinary-hearing practices to ensure further that DOC properly implements both the standards that we announced in *Avant* and the DOC's own regulations, and also conduct disciplinary hearings fairly. We do not require that disciplinary hearings be tape-recorded.

I

Inmate McDonald was charged with assaulting a person with a weapon, in violation of *N.J.A.C.* 10A–4–4.1(a)*003.

At 6:00 p.m. on September 4, 1992, during family day at the East Jersey State Prison visit hall, Corrections Lt. Robert Connell reported seeing McDonald twice lift a chair over his head and then swing it in a downward motion. Although the visitors' hall was crowded and Lt. Connell could not identify whom McDonald struck, Lt. Connell reported that he heard the chair striking flesh. Lt. Connell then yelled "fight" and moved toward the area with other officers. Lt. Connell took the chair out of McDonald's hands, escorted him out of the crowd, handcuffed him, and charged him with assault with a weapon. Corrections Officer Wadley also filed charges against McDonald, identifying inmate Smith as McDonald's victim. The hearing officer dismissed Officer Wadley's charges as "repetitive" of Lt. Connell's charges.

At the hearing, McDonald, assisted by a counsel substitute, denied that he had committed the assault. Instead, he claimed that inmate Spivey had struck him with a chair in the back of the head and that he had taken the chair from Spivey to defend himself. The record includes a hospital report indicating that McDonald was treated for a three-quarter inch superficial laceration on his head, but does not include any medical report for

inmate Smith, McDonald's alleged victim. In support of the hearing officer's determination and the institutional denial of McDonald's appeal, however, Superintendent Pinchak claims that the nurse's report supports the conclusion that McDonald had been involved in a fight.

The only record of the disciplinary hearing is a one-page report. In the space for inmate or counsel substitute's statement, the following summary of McDonald's defense appears: "I was assaulted first. I grabbed the chair. I didn't have a chance to use it. Smith was not involved. C/S [counsel substitute] states McDonald was the only victim." The report indicates that inmate-witness Lamb stated, "I ain't got nothing to say." The form had boxes for whether confrontation and cross-examination were requested and granted or denied, and lines for the testimony or reason for denial. No boxes were checked and "Not requested" was written on the lines.

McDonald, however, alleges that he did request the investigating officer to interview inmate witnesses Smith, Spivey, Lamb, Miller, and Williams. According to McDonald, the hearing officer informed McDonald that the witnesses had refused to comment. Superintendent Pinchak denies any knowledge of witnesses other than Lamb, noting that McDonald did not identify other witnesses.

The complaining officers did not testify. The hearing officer found McDonald guilty and imposed sanctions "[t]o maintain order in visit area and deter injuries between inmates." The hearing officer based his determination of guilt on Lt. Connell's report. McDonald received fifteen days detention, 180 days loss of commutation credits, 180 days administrative segregation from inmates Spivey and Smith, and 365 days loss of visitation privileges. Both the assistant superintendent of the prison and the Appellate Division denied McDonald's appeals. We granted McDonald's petition for certification, 134 *N.J.* 477, 634 *A.*2d 525 (1994).

## II

In 1974, the United States Supreme Court established minimum federal procedural due-process requirements for prison

disciplinary proceedings in *Wolff v. McDonnell*, 418 *U.S.* 539, 94 *S.Ct.* 2963, 41 *L.Ed.*2d 935 (1974). It stated "There is no iron curtain drawn between the Constitution and the prisons of this country." *Id.* at 555–56, 94 *S.Ct.* at 2974, 41 *L.Ed.*2d at 950. Although prisoners are not entitled to the same level of due-process rights as free persons, they are not "wholly stripped of constitutional protections." *Id.* at 555, 94 *S.Ct.* at 2974, 41 *L.Ed.*2d at 950. However, the due-process rights of convicted persons serving time behind bars are not the same as those for persons merely charged with a crime. *Id.* at 556, 94 *S.Ct.* at 2974, 41 *L.Ed.*2d at 951. Under the Fourteenth Amendment, constitutional rights are abridged to the extent necessary to accommodate the institutional needs and objectives of prisons. *Ibid.*

■ In New Jersey, the administrative rules and regulations that govern the fulfillment of due-process rights for prisoners are balanced against the needs and objectives of the prison. In *Avant*, we stated:

> It must be remembered that prisons and correctional institutions are not quiet monasteries. Their security and order are peculiarly dependent upon a system of swift, stern, unmistakable and yet fair disciplinary justice. That measure of control is as important to protecting the right to safety of the peaceful inmate population as to that of the correctional staff inside and the public outside.
>
> [67 *N.J.* at 561, 341 *A.*2d 629 (footnote omitted).]

■ Indeed, the daily interaction between inmates and prison officials can create a tense environment that requires special measures to ensure safety. Swift and certain punishment is one tool prison officials use to maintain order and discourage future misconduct by a perpetrator. Thus, a court must weigh any expansion or refinement of long-established due-process rights of prisoners against the safety of all the prisoners and of the corrections staff.

■ Despite the need to avoid aggravation of the already high level of confrontation inherent in a prison setting and to maintain personal security within the system, the United States Supreme Court in *Wolff* held that inmates are entitled to certain protections. 418 *U.S.* at 556, 94 *S.Ct.* at 2974, 41 *L.Ed.*2d at 951. At a

minimum, the United States Constitution requires that an inmate facing disciplinary charges receive: (1) a written notice of the alleged violation; (2) a written statement of the evidence relied on and the reasons for the disciplinary action taken; (3) a right to call witnesses and a right to present documentary evidence, when doing so would not be unduly hazardous to institutional safety or correctional goals; and (4) a right to assistance from a counsel substitute where the inmate is illiterate or the issues too complex for the inmate to marshal an adequate defense. *Id.* at 563–70, 94 *S.Ct.* at 2978–82, 41 *L.Ed.*2d at 955–59.

One year after *Wolff,* this Court decided *Avant* and extended State due-process guarantees beyond the federal constitutional minimum. See 67 *N.J.* at 520, 341 *A.*2d 629. To protect an inmate's interest, we held that DOC must structure an informal hearing to " 'assure that the [disciplinary] finding * * * will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the * * * [inmate's] behavior.' " *Id.* at 523, 341 *A.*2d 629 (quoting *Morrissey v. Brewer,* 408 *U.S.* 471, 485, 92 *S.Ct.* 2593, 2601–02, 33 *L.Ed.*2d 484, 496 (1972) (omissions in original)). The hearing may be informal, but the procedures must determine the factual accuracy of the charges.

Although McDonald alleges that inmates are routinely found guilty of disciplinary infractions, the facts reveal the contrary. For example, the Chief Hearing Officer of DOC submitted an affidavit showing that of the 33,914 major violations presented to the hearing officers for adjudication in 1993, 23,770 (70%) had been adjudicated guilty; 4,057 (12%) had been adjudicated not guilty; 5,659 (16%) had been downgraded by the hearing officer to an on-the-spot correction (minor disciplinary infraction); and 428 had been dismissed on due-process grounds. 2,216 disciplinary charges were referred by hearing officers back to the prison staff for further information. Moreover, a hearing officer is only one of several people involved in the pre-hearing process; an investigating officer who was not involved in the incident is appointed by the Superintendent to interview the inmate, his witnesses, and report-

ing staff members and to report directly to the hearing officer in charge of each case. *N.J.A.C.* 10A:4–9.5. Thus, some charges never reach the hearing stage because an investigating officer who thinks a charge is frivolous may halt the disciplinary process. Hearing officers therefore do not merely "rubber stamp" officers' charges, but make a good-faith effort to adjudicate charges fairly and impose appropriate sanctions.

In addition, hearing officers are employed by DOC, not by the individual prison. They are rotated among the prisons. They report directly to the Commissioner's office and not to any correctional institution's administrative staff.

### III

McDonald asserts that the hearing officer, or alternatively, the investigating officer, refused him the right to call witnesses and to present evidence, and refused him the right to confront and to cross-examine witnesses. He argues that those refusals violate his procedural due-process rights and administrative fairness.

a. Right to Call Witnesses and Present Evidence

*N.J.A.C.* 10A:4–9.13(a) provides that "[i]nmates shall be allowed to call witnesses and present documentary evidence in their defense when permitting them to do so will not be unduly hazardous to correctional facility safety or goals." New Jersey's standard follows *Wolff*'s mandate. See 418 *U.S.* at 566, 94 *S.Ct.* at 2979, 41 *L.Ed.*2d at 956 (holding that inmate should be allowed to call witnesses and present documentary evidence "when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals").

New Jersey's current regulation gives the hearing officer discretion to refuse to call witnesses, but goes beyond federal constitutional requirements mandating that "the reasons for each such refusal *shall* be separately specified on the Adjudication Form." *N.J.A.C.* 10A:4–9.13(a) (emphasis added). Although the

federal constitution does not require a contemporaneous recording of reasons, New Jersey was one of at least twenty-nine States and the District of Columbia that, as of 1985, required that hearing officers record reasons for refusing to hear witnesses. *Ponte v. Real*, 471 *U.S.* 491, 519 & n. 19, 105 *S.Ct.* 2192, 2207 & n. 19, 85 *L.Ed.*2d 553, 573 & n. 19 (citing N.J. Dep't of Corrections, Disciplinary Standard 254.18 (1984) (codified at *N.J.A.C.* 10A:4–9.13(a)). Hearing officers must record their reasons for refusing to call a witness " 'whether it be for irrelevance, lack of necessity or hazards presented in individual cases.' " *Avant, supra*, 67 *N.J.* at 531, 341 *A.*2d 629 (quoting *Wolff, supra*, 418 *U.S.* at 566, 94 *S.Ct.* at 2980, 41 *L.Ed.*2d at 957). For courts properly to review prison disciplinary proceedings, the record must show that prison officials observed mandatory procedural safeguards.

b. Right to Confrontation and Cross–Examination

*N.J.A.C.* 10A:4–9.14(a) provides that "if requested," the inmate shall be provided the opportunity for confrontation and cross-examination "where the Adjustment Committee or Disciplinary Hearing Officer deems it necessary for an adequate presentation of the evidence, particularly when serious issues of credibility are involved." Subsection (b) of that same provision further provides that a Disciplinary Hearing Officer or Adjustment Committee may refuse confrontation and cross-examination when they "would be unduly hazardous to correctional facility safety or goals."

 That State regulation provides more protection than the federal constitution. In interpreting the Fourteenth Amendment, the United States Supreme Court determined that requiring cross-examination and confrontation as a matter of course would lead to the "considerable potential for havoc inside the prison walls" and would result in longer, possibly unmanageable, proceedings. See *Wolff, supra*, 418 *U.S.* at 567, 94 *S.Ct.* at 2980, 41 *L.Ed.*2d at 957. Thus, under the federal constitution, "adequate bases for decisions in prison disciplinary cases can be arrived at without cross-examination," and whether to permit cross-examina-

tion is left to the "sound discretion" of the prison officials. *Id.* at 568, 94 *S.Ct.* at 2980, 41 *L.Ed.*2d at 958.

Going beyond the minimum protections provided under the federal constitution, this Court in *Avant* determined that under the New Jersey Constitution, cross-examination and confrontation must be available to the inmate when "necessary for an adequate presentation of the evidence, particularly when serious issues of credibility are involved." 67 *N.J.* at 530, 341 *A.*2d 629. Expanding New Jersey's protection of inmates, this Court in *Avant* amended the standards "by requiring that in those cases where the Committee 'deems' confrontation and cross-examination '[un-]necessary for an adequate presentation of the evidence' the reasons for such denial be entered in the record and made available to the inmate." *Id.* at 532, 341 *A.*2d 629 (quoting Standard 254.274) (alterations in original). This New Jersey requirement exceeds those of most states, which often do not provide for a written explanation from the hearing officer of his or her denial of cross-examination and confrontation to an inmate. Columbia Human Rights Law Review, *A Jailhouse Lawyer's Manual* 509 (3d 1992).

This Court determined that such a requirement represented a "more precise accommodation of the competing interests and would afford greater flexibility than would an absolute bar to or requirement of confrontation and cross-examination." *Avant, supra,* 67 *N.J.* at 532, 341 *A.*2d 629. Indeed, requiring that prison officials record reasons for not permitting an inmate to confront or cross-examine witnesses deters administrative arbitrariness. Case Comment, "Prisoners' Rights—New Jersey Fairness and Rightness Standard—Procedural Requirements Delineated for Prison Disciplinary Hearings," 29 *Rutgers L.Rev.* 729, 752 (1976). Furthermore, compliance with the requirement would permit reviewing authorities to determine whether or not there had been a proper exercise of discretion. See *id.* at 752–53 n. 134.

Because *N.J.A.C.* 10A:4–9.14 not only complies with *Avant* but exceeds the requirements of *Wolff,* we find no need to expand or

even to modify an inmate's right to confrontation and cross-examination.

## IV

We do find, however, a need for DOC to improve its recordkeeping. Reviewing bodies must be able to examine a record of disciplinary proceedings. Subsequent to oral argument, we were provided with an amended Adjudication of Disciplinary Charge form, approved by DOC's Commissioner. Specifically, this amended form provides space for a hearing officer's recordation and for an inmate's agreement that he had been given twenty-four hours between notice of the charge and a hearing, that he requested witnesses, and whether those witnesses had been called. Below the summary of those actions, the defendant inmate or his counsel substitute would sign to indicate that the information set forth on the Adjudication of Disciplinary Charge form accurately reflects what took place at the hearing.

The amended form delineates the choices open to defendant inmates and provides ample space for the hearing officer to explain what was or was not done. The form provides that disciplinary hearing officers record in writing their reasons for refusing an inmate's request to call witnesses and present evidence and for refusing an inmate's request to confront and cross-examine witnesses. Although not required, we suggest that DOC consider the feasibility of allowing defendant inmates to submit written requests for inmate witnesses to be attached to the record. All of these changes in the form used by DOC will result in improved recordkeeping. Most important, requiring the hearing officer to obtain a defendant inmate's signature or his counsel substitute's signature on the adjudication form with regard to those procedural issues will avoid factual disputes similar to those in this case and *Jacobs, supra,* also decided today, from being decided at such a late date. Instead, the disputes can be resolved at one hearing. The amended adjudication form will achieve two goals: the creation of a record that obviates the need for tape- or

video-recording, and the limitation of appealable issues solely to those included in the record.

In this case McDonald claims that the disciplinary hearing officer told him that his requested witnesses had refused to comment, while the assistant superintendent who reviewed the original determination denies having any knowledge of McDonald's requested witnesses, other than inmate Lamb. McDonald's counsel substitute claims that he did request an opportunity to cross-examine those who testified, including inmate Smith and Corrections Officer Wadley. However, the adjudication form bears the words "not requested" near the entry for cross examination, and no written evidence of explanation for such refusal exists. Such murky disclosures at this stage of appellate review illustrates the need for creation of a clear written record at each disciplinary hearing.

From the record at hand, we are unable to resolve the discrepancy between McDonald's claims that the hearing officer denied his request to call other witnesses and to confront adverse witnesses and the absence of such requests on the adjudication form. Despite the dissent's assertion that the original hearing officer cannot be an impartial adjudicator on remand and that McDonald and his substitute-counsel's undocumented claims about the partiality of the system must be accepted as true, *see post* at 206, 652 A.2d at 709, we need not decide whether that remand to the original hearing officer would result in a "substantial likelihood of prejudice." *N.J.A.C.* 10A:4–11.6(b). Rather we point to McDonald's substitute-counsel's affidavit to this Court to show that it was the investigating officer, not the hearing officer, who failed to interview witnesses that McDonald allegedly requested.

> At the disciplinary hearing, ... the hearing officer, ... read the statement of inmate Lamb from the investigating sergeant's report. The investigating sergeant failed to interview witnesses Smith and Spivey. Had the sergeant interviewed the inmates, the hearing officer would have read their names from the sergeant's report, even if the inmates had refused to give any statement.

We remand McDonald's case to DOC to clarify and amplify the record to determine whether McDonald did indeed request witnesses and whether he requested an opportunity to cross-examine and confront witnesses at the original hearing. If the Superintendent or his/her designee determines that allowing the same hearing officer to preside over that hearing would create a "substantial likelihood of prejudice" to McDonald, they may designate a new hearing officer. *N.J.A.C.* 10A:4.11.5 & .6.

After the remand, if it is concluded that McDonald did not request witnesses or an opportunity to cross-examine and confront witnesses, we find that the evidence now in the record is sufficient to establish McDonald's guilt. However, if McDonald did make those requests, then he should be given the opportunity to attempt to establish his innocence by calling those witnesses at a rehearing.

<h1 style="text-align:center">V</h1>

McDonald also urges this Court to require that disciplinary proceedings be tape-recorded to provide a more complete record for administrative and judicial review. The United States Supreme Court in *Wolff* did not mandate tape-recording under the Fourteenth Amendment. Current DOC regulations also do not require that disciplinary hearings be tape-recorded in New Jersey. Because this Court approved disciplinary regulations that were silent on the question of taping, the Appellate Division has determined that the State constitution does not require verbatim recording. *Negron v. New Jersey Dep't of Corrections,* 220 *N.J.Super.* 425, 431–32, 532 *A.*2d 735 (App.Div.1987). This Court can require tape-recording only if failure to tape-record disciplinary proceedings violates state constitutional notions of "fairness and rightness." *See Avant, supra,* 67 *N.J.* at 527, 341 *A.*2d 629.

Tape-recording or video-taping of disciplinary hearings produces a multitude of problems such as cost, burden, and delay. The only benefit of such documentation would be a lengthy but accurate record of what happened at the hearing. However, that

record would not include the hearing officer's investigation prior to the hearing or his discussions with identified witnesses. Hence, aspects of that hearing crucial to a thorough record would be absent despite the expense and burden of the taping. Moreover, the amended Adjudication of Disciplinary Charge form and the Court's prior suggestions for the refinement of that form will achieve many of the same purposes as would tape-recording. *Infra* at 210, 652 *A.*2d at 711. Although prison officials may choose to tape-record or video-tape disciplinary hearings, this Court will not require them to do so because neither New Jersey's "fairness and rightness" standard nor procedural due-process standards mandates tape-recording.

## VI

In this case and *Jacobs v. Stephens, supra,* 139 *N.J.* 212, 652 *A.*2d 712 also decided today, we do not grant inmates greater procedural protections than we gave them in *Avant,* but rather reaffirm and reinforce the procedural protections already recognized in *Avant* and already provided by DOC's regulations. The current regulations regarding the calling of witnesses and the confrontation and cross-examination of witnesses at disciplinary hearings strike the proper balance between the security concerns of the prison, the need for swift and fair discipline, and the due process rights of the inmates. If followed scrupulously, the regulations would likewise provide a proper record for review of disciplinary proceedings.

DOC must instruct hearing officers to follow its own regulations more carefully. Hearing officers must be instructed to complete the amended Adjudication of Disciplinary Charge form carefully. Strict adherence to the regulations and the adjudication form should be sufficient to guarantee that inmates receive a procedurally-correct and fair disciplinary hearing.

That inmates receive their minimum procedural protections is important to furthering the rehabilitative goal of correctional facilities. Over twenty years ago, this Court recognized that

procedural protections were due an inmate under the federal and State due-process clauses. We now reinforce those procedural protections.

We modify and affirm the judgment of the Appellate Division and remand to DOC for further proceedings in accordance with this opinion.

STEIN, J., concurring in part and dissenting in part.

I join the Court's disposition of this appeal only to the extent that it remands the matter to the Department of Corrections (DOC) for further proceedings. I write separately primarily to note my disagreement with that portion of the Court's opinion that limits the scope of the remand merely to a determination whether inmate McDonald's due-process right to call witnesses on his behalf and to confront and question adverse witnesses was violated. In my view, the remand should afford McDonald a new disciplinary hearing, and the prior determination should be vacated. Nor can I join that aspect of the Court's disposition that does not prohibit the same DOC hearing officer from redetermining factual matters concerning the conduct of the hearing that that hearing officer previously determined and noted in his report. Finally, although I agree with the Court's conclusion that this record would not support a determination requiring tape-recording of prison-disciplinary hearings, I strongly disagree with the Court's dismissive assessment concerning the due-process implications of tape-recording prison-disciplinary hearings. *Ante* at 200–201, 652 *A.*2d at 706.

I

Inmate McDonald was charged with assaulting a fellow inmate with a chair. Two corrections officers observed the incident and filed reports. Officer Connell's report stated that while he had been on duty at the East Jersey State Prison visit hall he had seen McDonald twice lift a chair over his head and swing it downward. Connell could not identify who was hit by the chair, but heard "the

impact of the chair hitting flesh." Officer Watley filed a similar report, noting that McDonald had struck inmate Smith with the chair. McDonald's version of the incident was that an inmate named Spivey had hit him with a folding chair and that he had grabbed the chair from Spivey to avoid being hit a second time. The record confirmed that McDonald had been treated for a three-quarter-inch superficial laceration on his head, but no evidence was adduced suggesting that inmate Smith, McDonald's alleged victim, had sustained any injuries.

A handwritten report of the adjudication of the charges against inmate McDonald, signed by Hearing Officer Donald Mee, Jr., constitutes the only record of the disciplinary hearing. According to that report, no witnesses testified against McDonald, and McDonald testified on his own behalf. Inmate Lamb, who was called as a witness, stated, "I ain't got nothing to say." The evidence against McDonald consisted of the reports of Lt. Connell and Officer Watley, a nurse's report of McDonald's injury, and the original Disciplinary Report that summarized the charges against McDonald. The portion of the adjudication report entitled "Confrontation/Cross–Examination requested" contains the Hearing Officer's handwritten notation, "not requested." The report states that the Hearing Officer relied on Lt. Connell's report in concluding that McDonald was guilty as charged.

According to both McDonald and his counsel-substitute, they requested that the investigating officers obtain statements from inmates Spivey, Smith, and Lamb, apparently contemplating that such statements would also be offered in evidence. The Hearing Officer informed them that only inmate Lamb's statement had been obtained. In addition, McDonald's counsel-substitute contended that he had requested permission to call inmate Smith as a witness and to cross-examine officer Watley concerning his report that he had observed McDonald hit Smith with the chair. According to McDonald and his counsel-substitute, the Hearing Officer denied both requests.

As noted by the majority, the hearing officer found McDonald guilty and imposed as sanctions 15 days detention, 180 days loss of commutation credits, 180 days administrative segregation from both inmate Smith, the alleged victim, and inmate Spivey, whom McDonald claimed to have been the assailant, and 365 days loss of visitation privileges. Both the assistant superintendent of the prison and the Appellate Division affirmed the Hearing Officer's determination. *Ante* at 193, 652 *A.*2d at 702.

## II

The majority acknowledges that inmates are permitted to call witnesses and present documentary evidence at disciplinary hearings " 'when permitting them to do so will not be unduly hazardous to correctional facility safety or goals.' " *Ante* at 196, 652 *A.*2d at 704 (quoting *N.J.A.C.* 10A:4–9.13(a)). If a hearing officer denies a request to call witnesses, the regulations require that "the reasons for each such refusal shall be separately specified on the Adjudication Form." *N.J.A.C.* 10A:4–9.13(a).

In addition, the regulations afford inmates the right of confrontation and cross-examination "where the * * * Disciplinary Hearing Officer deems it necessary for an adequate presentation of the evidence, particularly when serious issues of credibility are involved." *N.J.A.C.* 10A:4–9.14(a). The Hearing Officer is authorized to deny such a request if confrontation and cross-examination "would be unduly hazardous to correctional facility safety or goals." *Ibid.* In *Avant v. Clifford,* 67 *N.J.* 496, 341 *A.*2d 629 (1975), we held that in disciplinary proceedings in which the right of confrontation or cross-examination was denied, the reasons for such denial must be entered on the record and communicated to the inmate. 67 *N.J.* at 532, 341 *A.*2d 629.

As noted, the Hearing Officer's report conflicts with the assertion by McDonald and his counsel-substitute that they requested the right to cross-examine Officer Watley and that the request was denied by the Hearing Officer. The adjudication report prepared and signed by the Hearing Officer indicates that no

request was made to confront or cross-examine any witnesses, nor does the report contain any notation either confirming or contradicting McDonald's contention that he requested that inmate Smith be produced to testify at the hearing.

The majority opinion concedes that the Court is unable to resolve "the discrepancy between McDonald's claim that the hearing officer denied his request to call other witnesses and to confront adverse witnesses and the fact that the adjudication form reflects no such claim." *Ante* at 200, 652 *A*.2d at 706. Accordingly, the Court remands the matter to DOC to resolve that conflict.

In my view, the Court's remand to DOC is flawed in at least two respects. To the extent that the remand does not preclude the original Hearing Officer from presiding at the rehearing, the remand would appear to violate DOC's own regulations as well as the basic due-process requirement of an impartial hearing tribunal. Because no witness other than McDonald testified at the original hearing, only the original Hearing Officer could corroborate his own notation on the Adjudication Report that no request was made to cross-examine witnesses, and only that Hearing Officer could refute McDonald's contention that he requested that inmate Smith be produced as a witness. Thus, if the matter were remanded to the same Hearing Officer, he would be required to resolve fact issues concerning which his own testimony and recollection would be indispensable. DOC's regulations prohibit rehearings before the original "hearing body" if there is a "substantial likelihood of prejudice." *N.J.A.C.* 10A:4–11.6(b). Moreover, the requirement of a neutral, unbiased adjudicatory decision maker is a basic tenet of due process. *See* 2 Kenneth Culp Davis & Richard J. Pierce, Jr., *Administrative Law Treatise* § 9.8 (3d ed. 1994); *see also N.J.A.C.* 10A:4–8.3(d) (restricting DOC staff member from serving on committee conducting disciplinary hearing if member witnessed incident under consideration); *Avant, supra,* 67 *N.J.* at 525–28, 341 *A*.2d 629 (suggesting modification of DOC standards to insure impartiality of disciplinary-hearing tribunal).

Because the original Hearing Officer cannot be impartial in resolving the conflict between his notations on the Adjudication Report and the recollection of McDonald and his counsel-substitute, he cannot conduct impartially a rehearing ordered to adjudicate that conflict.

Moreover, the Court errs in assuming that a remand, even before a new hearing officer, could provide a reliable resolution of the conflict concerning what occurred at McDonald's disciplinary hearing on September 8, 1992. The affidavit of McDonald's counsel-substitute alleges that hearing officers invariably deny requests to call or cross-examine witnesses and routinely fail to record on the Adjudication Report that any such requests were made. That allegation suggests the possibility of a widespread practice of refusing requests for witnesses or for cross-examination in prison-disciplinary hearings, even if meritorious. *See, e.g., Walker v. Bates,* 23 *F*.3d 652, 656 (2d Cir.1994) (holding that because hearing officer summarily refused requests by inmate to call witnesses at disciplinary hearing, "[t]he denial of an inmate's right to call witnesses under circumstances such as those revealed here, constitutes, without more, a compensable constitutional due process violation"); *Moye v. Selsky,* 826 *F.Supp.* 712, 718 (S.D.N.Y.1993) (finding that hearing officer's refusal to permit inmate to call witness at disciplinary hearing "was not logically related to any correctional goals" and hence deprived inmate of due process).

Because DOC maintains no record of such hearings other than the report prepared by the Hearing Officer, reliable resolution of conflicts such as the one presented by this record becomes highly unlikely. Close to two and one-half years have elapsed since the disciplinary hearing in question. The Court's assumption that the original Hearing Officer accurately could recall the events at the prior hearing simply is unrealistic. Inevitably, an officer presiding at a remand hearing would have to decide whether the original adjudication report was more reliable than the recollection of McDonald and his counsel-substitute. In that context, the remand

ordered by the Court is little more than a formality, with a predictable outcome: The chance that McDonald's recollection will be found more credible than that of the original hearing officer ranges from slim to none. Under the circumstances, the Court's uncertainty over whether McDonald's due-process rights adequately were protected should be resolved in his favor, and the disciplinary determination adverse to him should be vacated, without prejudice to DOC's right to retry the charges before a new hearing officer.

Finally, based on the record before us the Court perceives "a need for DOC to improve its recordkeeping." *Ante* at 199, 652 *A.*2d at 705. Subsequent to oral argument, we were provided with a revised report form for prison-disciplinary-hearing adjudications, approved by DOC's Commissioner. The revised form affords the inmate or counsel-substitute a designated space either to acknowledge that the Hearing Officer's account of the proceeding is accurate, or to state the reasons for disputing the Hearing Officer's account of the proceedings. The Court anticipates that the revised form will avoid repetition of the issues presented by this appeal. *Ante* at 199, 652 *A.*2d at 705. Moreover, the Court notes that the revised form will achieve "many of the same purposes as would tape-recording." *Ante* at 202, 652 *A.*2d at 707. It characterizes tape-recording of disciplinary hearings as a process producing "a multitude of problems such as cost, burden and delay," and describes its only benefit as "a lengthy but accurate record of what happened at the hearing." *Ibid.* Accordingly, the Court concludes that tape-recording of prison-disciplinary hearings is permissible but not required to address due-process concerns.

In my view, the Court's conclusion concerning DOC's obligation to tape-record disciplinary proceedings is unnecessary to resolve this appeal, and does not address adequately the competing considerations that should inform any such determination. Surely this record does not establish that DOC's failure to tape-record disciplinary hearings deprived McDonald or other inmates of

constitutionally protected rights, and the Court has acknowledged that other procedures, such as the revised adjudication form, might adequately address the procedural shortcomings highlighted by McDonald's appeal. Whether DOC's failure to provide a tape-recorded record of disciplinary proceedings so adversely restricts other inmates' access to appellate review should await resolution on the basis of an adequate record.

Although prison-disciplinary proceedings are not subject to the provisions of the Administrative Procedure Act (APA), *N.J.S.A.* 52:14B–1 to –15, *see Zeltner v. New Jersey Dep't of Corrections*, 201 *N.J.Super.* 195, 199–200, 492 *A.*2d 1084 (App.Div.), *certif. denied*, 102 *N.J.* 299, 508 *A.*2d 186 (1985), the APA's provisions requiring a transcribed record of proceedings in all contested cases at either party's request reflects the indispensability of a verbatim record in providing appellate review of administrative hearings. See *N.J.S.A.* 52:14B–9; *N.J.A.C.* 1:1–8.2. The APA's provisions also apply to all other state agencies except for the State Board of Parole, the Public Employees Relations Commission, and the Division of Workers' Compensation. *See N.J.S.A.* 52:14F–8. In *Ohio Bell Telephone Co. v. Public Utilities Commission*, 301 *U.S.* 292, 302–03, 57 *S.Ct.* 724, 729–30, 81 *L.Ed.* 1093, 1100–01 (1936), Justice Cardozo acknowledged that the absence of an adequate record thwarts effective appellate review of administrative proceedings:

From the standpoint of due process—the protection of the individual against arbitrary action—a deeper vice is this, that even now we do not know the particular or evidential facts of which the Commission took[ ] notice and on which it rested its conclusion. Not only are the facts unknown; there is no way to find them out.

. . . .

 * * * To put the problem more concretely: how was it possible for the appellate court to review the law and the facts and intelligently decide that the findings of the Commission were supported by the evidence when the evidence that it approved was unknown and unknowable?

[*Ibid.*]

Although the Supreme Court in *Wolff v. McDonnell*, 418 *U.S.* 539, 564–65, 94 *S.Ct.* 2963, 2979, 41 *L.Ed.*2d 935, 956 (1974), required only a written record by the finder of fact of the evidence relied on and the reasons for the disciplinary action, other courts

have concluded that a transcript of the record of prison-disciplinary hearings is necessary to assure adequate appellate review. In *McGinnis v. Stevens,* 543 *P.*2d 1221 (1975), the Supreme Court of Alaska held that tape-recording of prison-disciplinary proceedings was required by the Alaska Constitution. The court observed:

> In our view, the requirement of a verbatim record will help insure that administrators faced with possible scrutiny by state officials and the public, and even the courts when it is asserted that fundamental constitutional rights may have been abridged, will act fairly. A verbatim record of the proceedings will furnish a more complete and accurate source of information than the "written statement" requirement of *Wolff,* will assist in facilitating a more intelligent review of the disciplinary proceeding, and moreover, the use of cassettes and other means of recording hearings may well prove less burdensome than the written statement requirement.
> [*Id.* at 1236.]

In addition, a number of other states have adopted regulations mandating that prison-disciplinary hearings be tape-recorded. *See, e.g., Colo.Code Regs., DOC Regulation* 203–1(h)(1) (1984); *D.C.Mun.Regs.* tit. 28, § 511.5 and .6 (1987); *Mass.Regs.Code* tit. 103, § 430.12(3) (1993); *New Hampshire Department of Corrections, Policy and Procedure Directive, Ref. No.* EC2–4085 & C2–4177 to –4196, IV D.11 (July 17, 1992); *N.Y.Comp.Codes R. & Regs.* tit. 7, § 254.6(b) (1994); *Vermont Department of Corrections, Policy Directive 410.03* E.8.e. (August 15, 1994). Those regulations undoubtedly reflect a recognition by those states that tape recording of prison-disciplinary hearings facilitates inmates' access to the courts to seek appellate review. Federal cases reviewing prison-disciplinary proceedings have recognized that " 'the constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to *challenge unlawful convictions and to seek redress for violations of their constitutional rights.*' " *Souza v. Travisono,* 498 *F.*2d 1120, 1123 (1st Cir.1974) (quoting *Procunier v. Martinez,* 416 *U.S.* 396, 419, 94 *S.Ct.* 1800, 1814, 40 *L.Ed.*2d 224, 243 (1974)).

If available, a transcript of McDonald's prison-disciplinary hearing would have definitively resolved the issues that concern the Court—whether McDonald exercised his right to call inmate Smith and to cross-examine officer Watley, and whether the

Hearing Officer denied those requests. In the companion case, *Jacobs v. Stephens,* 139 *N.J.* 212, 652 *A.*2d 712 (1995), also decided today, a transcript would have resolved the question the Court was unable to determine—whether Jacobs was informed of his right to confrontation and cross-examination. *Id.* at 221, 652 *A.*2d at 716. Because this record does not inform us adequately of the extent to which inmates' access to effective appellate review of prison-disciplinary proceedings generally is inhibited by the lack of a transcript, I would not decide whether tape-recording of prison-disciplinary proceedings is mandated by the due-process guarantees afforded by our State Constitution. Moreover, the issue might more productively be first addressed by DOC. The undesirability of basing review of prison-disciplinary cases on a written summary of the evidence prepared by the Hearing Officer that decided the matter is self-evident: The Hearing Officer's summary inevitably will reflect his or her view of the evidence and might tend to tilt the record to favor the Hearing Officer's disposition. From the standpoint of appellate review, the advantage of assuring the availability of a verbatim transcript prepared from a tape-recorded hearing is so clear as to be indisputable. On this flimsy record, the majority opinion's implication that the cost and burdens of tape-recording prison-disciplinary hearings might outweigh the benefits of a verbatim transcript is both unwarranted and unsubstantiated. In my view, DOC would be well advised to consider whether the reliability of the review afforded by tape-recorded hearings does not outweigh concerns based on their cost and any administrative burden that they entail.

I would vacate DOC's determination that McDonald was guilty of the filed charges, as well as the sanctions imposed, but would remand the matter to DOC to permit the charges to be retried before a different hearing officer.

*For modification, affirmance and remandment*—Chief Justice WILENTZ, and Justices HANDLER, POLLOCK and GARIBALDI—4.

*For reversal and remandment*—Justice STEIN.