**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3670-14T4

SHAMSIDDIN ABDUR-RAHEEM,

    Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

    Respondent.

_____

Submitted October 17, 2016 — Decided  May 10, 2017

Before Judges Fisher and Leone.

On appeal from the New Jersey Department of
Corrections.

Shamsiddin Abdur-Raheem, appellant pro se.

Christopher S. Porrino, Attorney General,
attorney for respondent (Lisa A. Puglisi,
Assistant Attorney General, of counsel; Nicole
E. Adams, Deputy Attorney General, on the
brief).

PER CURIAM

Appellant Shamsiddin Abdur-Raheem appeals the March 17, 2015 order by the New Jersey Department of Corrections (DOC) upholding disciplinary sanctions. We affirm.

I.

Appellant is currently serving a life sentence at the New Jersey State Prison for murder and kidnapping. On August 30, 2014, Senior Corrections Officer Forbes conducted a routine cell search of appellant's cell. Forbes discovered, hidden inside a toilet paper roll, a folded note with two small envelopes containing an unknown white powdery substance. Forbes seized the envelopes.

Appellant was charged with prohibited act *.203, "possession or introduction of any prohibited substances such as drugs, intoxicants or related paraphernalia not prescribed for the inmate by the medical or dental staff." N.J.A.C. 10A:4-4.1(a) (2014). He was placed in pre-hearing detention (PHD). On August 31, 2014, Sergeant Knox conducted an investigation and determined the *.203 charge had merit, served the disciplinary notice, and referred the charge to a hearing officer for further action. On September 3, 2014, the white powdery substance was sent to the State Police Laboratory for testing.

The prison disciplinary hearing began on September 3 and 4, 2014. On September 8, 2014, Disciplinary Hearing Officer (DHO)

Cortes postponed the hearing due to the "requirement that results from State Police Laboratory . . . are received prior to adjudication of disciplinary infraction." On February 5, 2015, the test results were received from the State Police Laboratory, as indicated by a "Courtline" date stamp on the report.[1] After performing gas chromatography, mass spectrometry, and other tests, the laboratory determined the white powdery substance was bupropion, a prescription drug for which appellant has no prescription.

The hearing resumed on February 9, 2015. Appellant then made requests for documents, witnesses, confrontation, a polygraph test, video surveillance, and DNA, fingerprint, urine, and handwriting analyses, resulting in DHO Zimmerman granting six brief postponements. The hearing concluded on February 24, 2015. DHO Zimmerman found appellant guilty of the *.203 charge and imposed the following sanctions: 90 days' administrative segregation with credit for time served, 90 days' loss of communication time, 365 days' urine monitoring, and permanent loss of contact visits.

---

[1] The prison disciplinary hearing system is commonly referred to as "Courtline." See, e.g., N.J. State Parole Bd. v. Woupes, 184 N.J. Super. 533, 535 (App. Div. 1981), certif. denied, 89 N.J. 448 (1982).

Appellant appealed DHO Zimmerman's decision to the Prison Administrator, who upheld the decision and sanctions. Appellant now seeks our review of the Prison Administrator's final decision.

## II.

"Our role in reviewing the decision of an administrative agency is limited." Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 190 (App. Div. 2010). "We defer to an agency decision and do not reverse unless it is arbitrary, capricious or unreasonable or not supported by substantial credible evidence in the record." Jenkins v. N.J. Dep't of Corr., 412 N.J. Super. 243, 259 (App. Div. 2010). Nonetheless, we must "engage in a 'careful and principled consideration of the agency record and findings.'" Williams v. Dep't of Corr., 330 N.J. Super. 197, 204 (App. Div. 2000) (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)). We must hew to our deferential standard of review.

## III.

Appellant claims his due process rights were violated because he did not receive a timely hearing. "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Jenkins v. Fauver, 108 N.J. 239, 248-49 (1987) (quoting Wolff v. McDonnell, 418 U.S. 539, 556, 94 S. Ct. 2963, 2975, 41 L. Ed. 2d 935, 951 (1974)). Our Supreme Court has set forth due

process rights that must be afforded to inmates. <u>Avant v. Clifford</u>, 67 <u>N.J.</u> 496, 525-46 (1975). Those rights are now codified in a comprehensive set of DOC regulations, <u>N.J.A.C.</u> 10A:4-9.1 to -9.28. The "regulations strike the proper balance between the security concerns of the prison, the need for swift and fair discipline, and the due-process rights of the inmates." <u>Williams</u>, <u>supra</u>, 330 <u>N.J. Super.</u> at 203 (citing <u>McDonald v. Pinchak</u>, 139 <u>N.J.</u> 188, 202 (1995)).

Under those regulations, "[i]nmates confined in Prehearing Disciplinary Housing shall receive a hearing within three calendar days of their placement in Prehearing Detention, including weekends and holidays, unless there are exceptional circumstances, unavoidable delays or reasonable postponements." <u>N.J.A.C.</u> 10A:4-9.8(c) (2014). In addition, <u>N.J.A.C.</u> 10A:4-9.9(a) provides:

> The failure to adhere to any of the time limits prescribed by this subchapter shall not mandate the dismissal of a disciplinary charge. However, the Disciplinary Hearing Officer or Adjustment Committee may, in its discretion, dismiss a disciplinary charge because of a violation of time limits. Such discretion shall be guided by the following factors:
>
> 1.  The length of the delay;
> 2.  The reason for the delay;
> 3.  Prejudices to the inmate in preparing his/her defense; and
> 4.  The seriousness of the alleged infraction.

Appellant was charged with possession of a prohibited substance. This required testing of the white powdery substance in the envelopes to determine if it was a prohibited substance. The substance was received by the State Police Laboratory within four days of being seized. However, Courtline had to wait five months to obtain the lab results from the State Police Laboratory.

It appears Courtline was diligent in attempting to obtain the laboratory results. DHO Cortes checked with the State Police Laboratory on September 3, September 9, September 29, October 10, October 20, December 2, and December 15, 2014, requesting an update on appellant's lab results. On October 20, a DOC Senior Investigator emailed Courtline advising "lab results normally take on average 4-6 months to be returned from the State Police Lab." Moreover, after DHO Cortes's December 15 request for an update, Courtline was advised that all "law enforcement entities in the state utilize the New Jersey State Police Lab" and that "all submissions to the State Police Lab are processed in the order of which received." Courtline scheduled appellant's hearing to occur within four days of receiving the lab results.

Waiting for the lab results was an "unavoidable delay[]," as the prison had to verify that the alleged prohibited substance was indeed a prohibited substance before it could proceed to adjudicate the *.203 charge. N.J.A.C. 10A:4-9.8(c) (2014). Appellant does

6                                                      A-3670-14T4

not dispute his multiple requests for a panoply of tests and evidence caused and justified the remaining "reasonable postponements." Ibid. Accordingly, Courtline's scheduling of the hearing did not violate N.J.A.C. 10A:4-9.8(c).

In any event, "[f]ailure to adhere to any of the time limits prescribed by [N.J.S.A. 10A:4-9.8(c)] shall not mandate the dismissal of a disciplinary charge." Negron v. N.J. Dep't of Corr., 220 N.J. Super. 425, 429 (App. Div. 1987) (quoting N.J.A.C. 10A:4-9.9). DHO Zimmerman considered the four factors in N.J.A.C. 10A:4-9.9(a) and declined in his discretion to dismiss the charge. He "acknowledge[d] the excessive delay" of six months but stressed the primary reason: "Lab results are necessary to adjudicate the charge, and the DHO can not proceed without them." He noted "DHO Cortes inquired about the lab results multiple times." DHO Zimmerman also cited the seriousness of the alleged infraction, highlighting that "[t]aking medication that is not prescribed can cause significant health problems" and that possessing non-prescribed drugs posed "safety and security" concerns. Further, "[p]rohibited acts preceded by an asterisk (*) are considered the most serious and result in the most severe sanctions." N.J.A.C. 10A:4-4.1(a).

After considering "[t]he length of the delay," "[t]he reason for the delay," the lack of "[p]rejudices to the inmate in

preparing his/her defense," and "[t]he seriousness of the alleged infraction," N.J.A.C. 10A:4-9.9(a), DHO Zimmerman declined in her discretion to dismiss the charge. We cannot say that decision was arbitrary, capricious, or unreasonable. Indeed, appellant does not allege any prejudice to his defense from the delay.[2]

Appellant notes the State Police Laboratory Report indicates it was notarized and signed by the analyst on October 15, 2014. He concedes the report was not received by Courtline until February 5, 2015. He claims "[t]he results were intentionally withheld by SID investigators to harass and punish appellant with psychological no-touch torture by prolonging his adjudication while subjecting him to harsh conditions of" PHD in violation of N.J.A.C. 10A:4-9.8(e). He has not offered any evidence of such intentional wrongdoing. In fact, the prison's associate administrator, noting that appellant was "on PHD status pending lab results" and that "[w]e do not expect the results anytime soon," instructed prison officials to release appellant from PHD on December 2, 2014 — more than two months before Courtline received the report. Thus, it appears the delay was caused not by an evil conspiracy, but by the troubling inefficiencies of the

---

[2] Instead, appellant claims the delay in receiving the lab test results caused DHO Zimmerman to deny his numerous evidence requests, but the DHO's denials were proper, as set forth infra.

State Police Laboratory in processing drug tests and communicating the results. Nonetheless, it was not arbitrary, capricious, or unreasonable to decline to dismiss this serious charge under these circumstances.[3]

IV.

Appellant also argues his due process rights were violated by the denial of his request for polygraph examination. "[Appellant] does not have the right to a polygraph test." Johnson v. N.J. Dep't of Corr., 298 N.J. Super. 79, 83 (App. Div. 1997). "An inmate's request for a polygraph examination shall not be sufficient cause for granting the request." N.J.A.C. 10A:3-7.1(c). "This administrative code section is designed to prevent the routine administration of polygraphs, and a polygraph is clearly not required on every occasion that an inmate denies a disciplinary charge against him." Ramirez v. Dep't of Corr., 382 N.J. Super. 18, 23—24 (App Div. 2005). Therefore, "a prison administrator's determination not to give a prisoner a polygraph examination is discretionary and may be reversed only when that

---

[3] Appellant claims the prison was not permitted to hold him in disciplinary detention for more than fifteen days. N.J.A.C. 10A:4-5.3(a)(1) (2014). However, he was placed in "prehearing detention" under N.J.A.C. 10A:4-10.1 (2014), not "disciplinary detention" under N.J.A.C. 10A:4-10.2 (2014). In any event, he received credit for his prehearing detention against his sentence to ninety days of administrative segregation. See N.J.A.C. 10A:4-10.1(f) (2014).

determination is 'arbitrary, capricious or unreasonable.'" Id. at 24.

"[A] polygraph examination is not required when corroborating evidence . . . exist[s]." Id. at 25. Here, the note, envelopes, and bupropion constituted corroborating evidence. Moreover, appellant was allowed to confront Officer Forbes and pose numerous questions to him. Thus, appellant "failed to demonstrate that the denial of his request for a polygraph negated the fundamental fairness of the disciplinary proceeding which would compel the granting of his request for a polygraph." Id. at 26.

We also reject appellant's challenges to the denial of his requests for other tests and evidence. The DHO properly denied appellant's request for records of searches of his cell a week or more earlier as irrelevant, as "[t]horough cell searches may be conducted as often as once a week" and "[s]pot-checks of cells may be conducted at any time." N.J.A.C. 10A:5-2.28(a). His request for video surveillance failed because no video was taken of the routine cell search. His request for urinalysis could not have exculpated him as he was charged with possession, not use, of a prohibited substance. Similarly, handwriting analysis of the note would not have exculpated him as it was an apparently unrelated paper used as packaging. Fingerprint analysis was not shown to be possible or revelatory. Appellant was given a witness statement

from a social worker who stated he had no reports or recollection, so appellant's request to call him as a witness was properly denied as irrelevant. N.J.A.C. 10A:4-9.13(a)(2). We cannot say denial of these requests negated the fundamental fairness of the disciplinary proceeding.

Appellant claims he did not receive a copy of the lab results until this appeal. However, it appears he did receive the lab results at the hearing because the Adjudication of Disciplinary Charge form lists the lab results as one of the prison's "non-confidential exhibits," and his counsel substitute signed the form "acknowledg[ing] that [the form] accurately reflects what took place at the inmate disciplinary hearing." This "important" provision for "the defendant inmate or his counsel substitute [to] sign to indicate that the information set forth on the Adjudication of Disciplinary Charge form accurately reflects what took place at the hearing" is designed to "avoid [such] factual disputes" and to keep them "from being decided at such a late date." McDonald, supra, 139 N.J. at 199.

In any event, appellant failed to raise this claim in his administrative appeal. "The obligation to exhaust 'administrative remedies before resort to the courts is a firmly embedded judicial principle.'" Ortiz v. N.J. Dep't of Corr., 406 N.J. Super. 63, 69 (App. Div. 2009) (citation omitted). "While the exhaustion

11

requirement may be relaxed in the interest of justice, that relief is not appropriate when the factual record is less than adequate and the issue presented is one that requires the expertise of the agency." Ibid. By failing to raise the claim, defendant has deprived us of agency review and an adequate factual record to support his claim.[4]

V.

Finally, appellant argues his due process rights were violated because his counsel substitute failed to provide adequate assistance. Pursuant to N.J.A.C. 10A:4-9.12(a), "[w]hen an inmate has been charged with an asterisk offense, the inmate shall be afforded the right to request representation by a counsel substitute."[5] Our Supreme Court has held that requiring inmates to be represented by attorneys "would be wholly incompatible with New Jersey institutional needs and capacities and . . . unessential

---

[4] Appellant also contends counsel substitute should not have signed the Adjudication of Disciplinary Charge form because it was inaccurate. However, appellant did not make that claim in his administrative appeal, which simply alleged "inadequate access/assistance from counsel substitute." We decline to address this unexhausted claim.

[5] An inmate has a due process "right to assistance from a counsel substitute where the inmate is illiterate or the issues too complex for the inmate to marshal an adequate defense." McDonald, supra, 139 N.J. at 195; see N.J.S.A. 10A:4-9.12(b). Here, appellant proved perfectly capable of writing literate motions and briefs and marshalling a more-than-adequate defense in this relatively simple case.

to protection of the inmate's rights." Avant, supra, 67 N.J. at 537. Rather, the prison need only "choose a sufficiently competent staff member or inmate to provide assistance" or allow the inmate to choose "a consenting staff member or inmate." Id. at 529. A counsel substitute may be any "individual, such as an inmate paralegal, teacher or social worker." N.J.A.C. 10A:1-2.2. Inmate paralegals are not attorneys and receive limited training. N.J.A.C. 10A:6-2.12(b), -2.13. To hold counsel substitutes to the standards of legally-educated, licensed, and practicing attorneys would be unrealistic, and likewise "wholly incompatible with New Jersey institutional needs and capacities and . . . unessential to protection of the inmate's rights." See Avant, supra, 67 N.J. at 537.

Appellant has not shown counsel substitute was incompetent or failed to fulfill his limited role. Indeed, counsel substitute met with appellant, inquired with Courtline about the delay of the hearing, examined the evidence, prepared a brief requesting polygraph examination, and assisted appellant in the hearing.

Appellant's remaining arguments lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirm.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3670-14T4