**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1573-16T1

MARVIN MAYS,

     Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____

Submitted December 12, 2018 – Decided December 31, 2018

Before Judges Koblitz and Currier.

On appeal from the New Jersey Department of Corrections.

Marvin Mays, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Suzanne M. Davies, Deputy Attorney General, on the brief).

PER CURIAM

Marvin Mays is an inmate currently confined at South Woods State Prison. He appeals from the November 22, 2016 final decision of the Department of Corrections (DOC) imposing disciplinary sanctions upon him for committing prohibited act .254, refusing to accept a housing unit assignment, in violation of N.J.A.C. 10A:4-4.1(a)(3)(ix). He was sanctioned to ten days loss of recreation privileges as well as thirty days loss of commutation time and thirty-one days of administrative segregation, both suspended for sixty days.[1] We affirm.

Mays is now 67 years old. He uses a wheelchair, and is prescribed various medications including OxyContin. He is serving a fifty-year plus six months' sentence for two counts of robbery, N.J.S.A. 2C:15-1(a)(1), kidnapping, N.J.S.A. 2C:13-1(b)(1), aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1), simple assault, N.J.S.A. 2C:12-1(d), and terroristic threats, N.J.S.A. 2C:12-3(a).

On November 13, 2016, Mays was transferred from Northern State Prison to South Woods. On that same day, according to Officer Harris, while Mays was receiving medication from staff, Mays was informed that he would not be receiving "certain medication" and he became "very agitated and belligerent."

---

[1] The effect of suspending the sanctions was that they would not be effectuated if Mays did not commit an infraction for sixty days. See N.J.A.C. 10A:4-9.18.

Harris gave Mays a direct order to go to his housing unit. Mays refused, stating, "I'm not going anywhere until I see a sergeant." According to Mays, Harris asked Mays if he was "refusing to lock in?" to which he responded that he "was sick, needed [his] pain meds, and needed to talk to a sergeant." Although a sergeant was called, Mays was given no additional medication and was locked up for refusing the order to go to his housing unit.

On November 16, 2016, a hearing took place, at which Mays was granted a counsel substitute. The hearing officer (HO) found Mays guilty of the charge, writing:

> Staff reports [inmate] refused to accept housing assignments (to lock in). [Inmate] pleads not guilty & states he asked to see a [sergeant], but never refused housing. [HO] notes charge states [inmate] was told twice to lock in, but refused, stating "I'm not going anywhere until I see a [sergeant]." [HO] notes [inmates] must obey orders for safety & security purposes. All relied on to determine guilt.

The HO listed reasons for the sanctions: "no evidence of mental health problems. [Inmate] advised of 48 hours to appeal. Sanction to deter [inmates] from refusing to accept housing & to promote a safe & secure facility. [HO] notes [inmate] has been charge free since 2009."

On November 17, 2016, Mays administratively appealed the decision based on "misinterpretation of the facts" and asked for leniency, arguing that he

was only attempting to talk to a sergeant to resolve his medication issue. On administrative appeal, Mays' counsel substitute wrote:

> [Inmate] is respectfully requesting that you please rescind and/or downgrade this charge to a .709 failure to comply with a written rule or regulation as an "on-the-spot-correction," downgrading the blue sheet. Please be advised that this [inmate] had just arrived here from [Northern State Prison]. Upon arrival, he informed his unit officer of what he would have to do to get his pain medication. He asked to speak to a sergeant and was told he could speak to one at the medline if he had further issues. The medline did not have his pain medication. He asked the medline officer to speak to a sergeant, but the medline officer would not allow him to and had him return to his unit. [Inmate] advised that when asking for a supervisor at [Northern State Prison] there are no issues. All he was doing was utilizing the chain of command to address his issue. He should not be punished for doing so.

On November 22, 2016, Assistant Superintendent Christopher Cline upheld the decision and sanctions, explaining that "[t]here was compliance with N.J.A.C. 10A subchapters on inmate discipline which prescribe procedural safeguards. There was no misinterpretation of the facts. Your plea for leniency has been considered. No leniency will be afforded to you."

Our review of an administrative agency decision is limited. Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 190 (App. Div. 2010). An administrative agency's determination will not be disturbed "absent a showing

that it was arbitrary, capricious, or unreasonable . . . ." Ibid. Mays argues on appeal that he should not have been found guilty of refusing a housing assignment, .254, but rather the less serious .256, "refusing to obey an order of any staff member." See N.J.A.C. 10A:4-4.1(a)(3)(ix) and (4)(iv). He was originally charged with both infractions. Mays points to the language on the adjudication form, "[inmates] must obey orders."

For prison inmates, "constitutional rights are abridged to the extent necessary to accommodate the institutional needs and objectives of prisons." McDonald v. Pinchak, 139 N.J. 188, 194 (1995) (citing Wolff v. McDonnell, 418 U.S. 539, 556 (1974)).

> An inmate facing disciplinary action must be provided with the following limited protections: (1) written notice of the charges, provided at least twenty-four hours before the hearing, so the inmate can prepare a defense; (2) an impartial tribunal, consisting of either one HO or a three-member adjustment committee; (3) the assistance of a counsel substitute if the inmate is illiterate or unable to collect or present evidence; (4) the right to call witnesses and present documentary evidence, provided it is not "unduly hazardous to institutional safety or correctional goals"; (5) the right to confront and cross-examine adverse witnesses; and (6), quoting the Standards on the Inmate Discipline Program section 254.283, "a written statement of the fact-findings is given to the inmate by the [HO] or by the adjustment committee chairman as to the evidence relied upon, decision and the reason for the disciplinary

action taken unless such disclosure would jeopardize institutional security."

> [Malacow v. N.J. Dep't of Corr., ___ N.J. Super. ___, ___ (App. Div. 2018) (slip op. at 5-6) (citation omitted) (quoting Avant v. Clifford, 67 N.J. 496, 525-33 (1975)).]

Each of these procedural requirements was met. Mays' charge was delivered to him on November 14, 2016, more than twenty-four hours before the November 16, 2016 hearing. His case was decided by an impartial tribunal, an HO member of the Department's central office staff. He was granted the assistance of counsel substitute. Mays was provided the opportunity to call witnesses on his behalf, and to confront and cross-examine witnesses, which he declined. Finally, Mays was afforded the opportunity to review the adjudication report and acknowledged that the content of the report was accurate.

"A finding of guilt at a disciplinary hearing shall be based upon substantial evidence that the inmate has committed a prohibited act," N.J.A.C. 10A:4-9.15(a), meaning "such evidence as a reasonable mind might accept as adequate to support a conclusion," Figueroa, 414 N.J. Super. at 192 (quoting In re Public Service Electric & Gas Co., 35 N.J. 358, 376 (1961)). Although Mays could have been convicted of the less serious failure to obey an order, the evidence

6

also supported a refusal to accept his housing assignment, as he conditioned his acceptance on the receipt of his medication.

The HO evidently had sympathy for Mays' situation because she suspended the more onerous aspects of the sanctions imposed. She also gave inmate-specific reasons for imposing the sanction, as required. Malacow, ____ N.J. Super. ___ (slip op. at 10-11).

Mays argues for the first time on appeal that because he did not receive a copy of the rule book upon his arrival to South Woods, he was not aware that his request to see a sergeant would result in a "lock up." Although Mays should have received a rule book upon his arrival at a new correctional institution, N.J.S.A. 30:4-8.5; N.J.A.C. 10A:4-2.1(b), this infraction occurred on Mays' first day, so it is premature to assess a violation of this requirement. Additionally the statute and regulation do not anticipate that, absent receipt of a rule book, an inmate may disobey all rules with impunity.

Mays' further arguments that the sanction was excessive, his counsel substitute was ineffective and the administrative appeal was insufficiently thorough, are without sufficient merit to require discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1573-16T1