**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4720-18

ADAM REED,

     Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____

Submitted February 10, 2021 – Decided March 4, 2021

Before Judges Vernoia and Enright.

On appeal from the New Jersey Department of Corrections.

Adam Reed, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Sookie Bae, Assistant Attorney General, of counsel; Beonica McClanahan, Deputy Attorney General, on the brief).

PER CURIAM

Appellant Adam Reed, an inmate at New Jersey State Prison, appeals from the May 23, 2019 final determination of the Department of Corrections (DOC) upholding a hearing officer's finding that he committed prohibited acts *.306, conduct which disrupts or interferes, and *.708, refusal to submit to a search, in violation of N.J.A.C. 10A:4-4.1(a).[1] We vacate the finding of guilt with regard to these infractions and remand the matter for further proceedings.

On May 7, 2019, the Special Investigation Division (SID) informed Sergeant Chris Manion that appellant might possess contraband, so Reed was targeted for a strip search that day. Officers approached Reed as he was on his way to attend religious services, and pulled him aside for the search. According to the incident report, Reed did not comply with officers' verbal commands to keep his hands on his head and refrain from turning around to face the officers. Officer Jonathan Mohammed reported that while Reed was stripping, the inmate quickly turned towards him and lunged at him with his hands raised, posing "an immediate threat." Officers Juan Castillo and Kyle Whitaker provided similar accounts of the incident. Officer Castillo reported that Reed "was warned multiple times to not turn around during said search. The inmate was taken to

---

[1] Appellant also was charged with *.803/*.002, attempting to commit/assaulting another person, but was found not guilty of same, so this charge is not discussed in this opinion.

the ground after turning aggressively towards custody staff." Likewise, Officer Whitaker wrote in his report that Reed "was given multiple orders to keep his hands on his head and to stop turning around to face the officers. After numerous chances of the inmate turning around, I assisted on taking the inmate to the ground."

During the incident, Sergeant Manion radioed "Code 33," which notified custody staff to leave their posts and assist other officers to prevent injury or death to the inmate or officer. Reed was restrained and escorted for a medical examination. Subsequently, he was placed in a "dry cell," which is designed to monitor inmates and prevent them from disposing of contraband.

Reed was notified of the disciplinary charges against him. Notably, according to the DOC,

> [b]ecause Reed was in a dry cell on contraband watch, the Sergeant was unable to leave a copy of the charges on Reed's person . . . . However, the Sergeant read the charges to Reed and physically showed Reed the charges. Reed acknowledged that he understood the charges and the Sergeant posted a copy [on] Reed's cell door.
>             . . . .
>
> Thus, Reed received notice of the charges and had a copy of the charges in his possession, even if not physically in his hands.

A-4720-18

Reed contends that prison cell walls are "solid," and the prison cell door is "solid steel, with a 6" wide window," which cannot be blocked. Thus, "[e]ven if the charge documents were on the outside of the door," he could not see or read them.

Reed's disciplinary hearing was conducted on May 9, 2019. At the hearing, Reed had the assistance of counsel substitute and entered a "no plea" to the charges. He declined the opportunity to confront or cross-examine adverse witnesses or to call witnesses. In his inmate statement, he asserted he was "totally compliant" during the search, kept his "hands on [his] head [and] only turned [his] head to speak with [Sergeant Manion]." Counsel substitute relied on this statement and requested leniency.

The hearing officer found Reed guilty of both charges and sanctioned him to 120 days of administrative segregation and 120 days' loss of commutation time. Reed pursued an administrative appeal and again argued he was innocent of the charges. The DOC upheld the hearing officer's findings.

On appeal, Reed contends his due process rights were violated, the finding of guilt was not supported by sufficient credible evidence because a video taken by an officer contradicts the hearing officer's findings, the language of prohibited act *.306 is vague, and prison officials did not comply "with the due

4

process mandated by this prohibited act." Further, he argues "[t]he appeal should be granted in the interests of justice."

Our review of a final agency decision is limited. Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 190 (App. Div. 2010). Reversal is appropriate only when the agency's decision is arbitrary, capricious, or unreasonable, or unsupported by substantial credible evidence in the record as a whole. Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980); see also In re Taylor, 158 N.J. 644, 657 (1999) (holding that a court must uphold an agency's findings, even if it would have reached a different result, so long as sufficient credible evidence in the record supports the agency's conclusions).

"[A]lthough the determination of an administrative agency is entitled to deference, our appellate obligation requires more than a perfunctory review." Figueroa, 414 N.J. Super. at 191 (quoting Blackwell v. Dep't of Corr., 348 N.J. Super. 117, 123 (App. Div. 2002)). We engage in a "careful and principled consideration of the agency record and findings" relating to inmate disciplinary adjudications. Williams v. Dep't of Corr., 330 N.J. Super. 197, 204 (App. Div. 2000) (quoting Mayflower Sec. Co. v. Bureau of Sec. in Div. of Consumer Affairs of Dep't of Law & Pub. Safety, 64 N.J. 85, 93 (1973)).

In the penal setting, due process "rights may be diminished by the needs and exigencies of the institutional environment," but they may not be extinguished because "[t]here is no iron curtain drawn between the Constitution and the prisons of this country." Wolff v. McDonnell, 418 U.S. 539, 555-56 (1974). As our Supreme Court acknowledged long ago, in a disciplinary proceeding, an inmate is not accorded the full panoply of rights afforded a defendant in a criminal prosecution. Avant v. Clifford, 67 N.J. 496, 522 (1975). Nonetheless, an inmate is entitled to "adequate and specific notice of the violation charged," and "[a]fter providing the inmate with the written charge, the [assigned] investigator must also read it to the inmate and obtain his statement concerning the incident." Id. at 528 (emphasis supplied). The Court subsequently held:

> At a minimum, the United States Constitution requires that an inmate facing disciplinary charges receive: (1) a written notice of the alleged violation; (2) a written statement of the evidence relied on and the reasons for the disciplinary action taken; (3) a right to call witnesses and a right to present documentary evidence, when doing so would not be unduly hazardous to institutional safety or correctional goals; and (4) a right to assistance from a counsel substitute where the inmate is illiterate or the issues too complex for the inmate to marshal an adequate defense.
>
> [McDonald v. Pinchak, 139 N.J. 188, 194-95 (1995) (citing Wolff, 418 U.S. at 563-70) (emphasis added).]

6

Also, the New Jersey Administrative Code confirms that when a violation of a prohibited act has occurred, a DOC staff member or "the staff of a contracted vendor who witnessed it or . . . has probable cause to believe that a prohibited act has occurred shall prepare [a] . . . [d]isciplinary [r]eport." N.J.A.C. 10A:4-9.1(a). Further,

> [t]he disciplinary report shall be served upon the inmate within [forty-eight] hours after the violation unless there are exceptional circumstances. The report shall be delivered by the reporting staff member or the investigating custody staff member. The report shall be signed by the person delivering it and the date and time of delivery shall be noted. The inmate shall have [twenty-four] hours to prepare his or her defense.
>
> [N.J.A.C. 10A:4-9.2 (emphasis added).]

Moreover, the officer responsible for investigating the disciplinary infraction "shall verify that the inmate has received the written charge. The investigating officer shall also read the charge to the inmate . . ., take the inmate's plea, and ask if the inmate wishes to make a statement concerning the incident or infraction." N.J.A.C. 10A:4-9.5(e).

Here, the DOC does not assert it fully complied with N.J.A.C. 10:4-9.5(e). Instead, it contends that "[b]ecause Reed was in a dry cell on contraband watch, the Sergeant was unable to leave a copy of the charges on Reed's person," so

7                                                    A-4720-18

instead, "the Sergeant read the charges to Reed and physically showed Reed the charges." We are not persuaded these steps satisfied Reed's due process rights.

While we appreciate Reed was housed in a dry cell when his charges were read to him, N.J.A.C. 10A:4-9.2 specifies an inmate "shall be served" with the written notice of the charges against him, absent "exceptional circumstances." The DOC does not argue that Reed's mere presence in a dry cell constitutes "exceptional circumstances." Also, the DOC does not cite to any authority providing that the DOC is exempted from serving a prisoner written notice of disciplinary charges when that prisoner is on "contraband watch" or in a dry cell. Additionally, there is no explanation regarding why, if exceptional circumstances did exist, the DOC could not have briefly postponed Reed's hearing until he could be served with written notice of his charges. See N.J.A.C. 10A:4-9.8(b) (noting an "inmate shall be entitled to a hearing within seven calendar days of the alleged violation . . . unless such hearing is prevented by exceptional circumstances, unavoidable delays or reasonable postponements").

It is well established that asterisk offenses "are considered the most serious and result in the most severe sanctions." N.J.A.C. 10A:4-4.1(a). Written notice of charges enables an inmate to "marshal the facts and prepare a defense" to such serious offenses. Wolff, 418 U.S. at 564. Here, we are satisfied the lack

8

of service of written notice of Reed's charges prejudiced his ability to "marshal the facts and prepare a defense." Moreover, the record is devoid of facts to demonstrate that exceptional circumstances existed to warrant waiver of such service. Accordingly, Reed is entitled to a new disciplinary hearing.

Reed also argues that the language set forth in \*.306 under N.J.A.C. 10A:4-4.1(a) is vague, depriving him of understanding what conduct constitutes "conduct that disrupts" the prison facility. We disagree.

"The institutional need to control the inmate population and maintain order is manifest." Jenkins v. N.J. Dept. of Corr., 412 N.J. Super. 243, 252 (App. Div. 2010). As our Supreme Court observed, "the daily interaction between inmates and prison officials can create a tense environment that requires special measures to ensure safety. Swift and certain punishment is one tool prison officials use to maintain order and discourage future misconduct by a perpetrator." McDonald, 139 N.J. at 194. In the context of prison disciplinary proceedings, however, notice of prohibited conduct is a critical component of due process and fundamental fairness. Avant, 67 N.J. at 525. Such notice cannot be vague and must "be sufficiently clear and precise so that people are given fair notice and adequate warning of the law's reach." Town Tobacconist v. Kimmelman, 94 N.J. 85, 125 n.21 (1983). Because due process protects an

9

inmate's right to notice, "a statute which either forbids or requires the doing of an act in terms so vague that [individuals] of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." Connally v. Gen. Constr. Co., 269 U.S. 385, 391 (1926).

To succeed on a facial vagueness challenge, the person challenging the law must show it is "impermissibly vague in all its applications." State v. Cameron, 100 N.J. 586, 594 (1985). However, when the law is challenged as applied, it must be proven that the law lacks clarity in the context of the particular case. Ibid. Guided by these standards, we are persuaded Reed failed to demonstrate that *.306 is facially vague or unclear in the context of his case. See Colten v. Kentucky, 407 U.S. 104, 110 (1972).

We are mindful that a disciplinary infraction based on prohibited act *.306, defined as "conduct which disrupts or interferes with the security or orderly running of the correctional facility," does not expose Reed to either a complete loss of freedom or a curtailment of his liberty beyond the schedule of sanctions for asterisk offenses set forth in N.J.A.C. 10A:4-5.1(a).[2] Accordingly,

---

[2]  *.306 is defined as a Category B offense, which upon a finding of guilt for same "shall result in a sanction of no less than 91 days and no more than 180

the potential punishment for this infraction does not warrant a heightened degree of scrutiny. Additionally, while the definition of \*.306 somewhat broadly encompasses a variety of prohibited acts, we are persuaded the offense, as defined in N.J.A.C. 10A:4-4.1, does not suffer from vagueness. In short, the DOC is not required to identify every act of prohibited conduct which could disrupt or interfere with the security or orderly running of the correctional facility. Moreover, the definition of \*.306 is clear enough to provide inmates with adequate notice that disruptive behavior will not be tolerated. The type of behavior in which Reed purportedly engaged, which was detailed in multiple officers' reports, certainly qualifies as "disruptive." A person of common intelligence would understand that ongoing resistance to an officer's commands in a prison setting is disruptive and could trigger the involvement of other staff or officers, thereby interfering with the "security or orderly running of the correctional facility."

---

days of administrative segregation per incident," "unless a medical or mental health professional determines that the inmate is not appropriate for administrative segregation placement;" additional sanctions identified in N.J.A.C. 10A:4-5.1 also may be imposed.

A-4720-18

We also consider defendant's contention that the DOC deprived him of due process by failing to provide him with a copy of the video showing he was escorted naked to his medical exam. Again, we are not persuaded.

Reed argues that the missing video is "crucial to [our] evaluation of the facts in this matter" and that the DOC "can hardly claim . . . he refused to submit to a strip search if he is naked in the video [when he was] removed from the strip search to the medical clinic." This argument is flawed. Indeed, Reed admits the "video begins with moving [him] from where he was strip searched to the medical clinic." Therefore, his state of undress in the video would not shed light on whether he refused to submit to a search and ignored officer's commands before being restrained.

In light of our decision to remand, we need not address Reed's contention that the hearing officer's finding of guilt is not supported by sufficient credible evidence. To the extent we have not addressed Reed's remaining arguments, we are satisfied they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

We vacate the final decision and remand the matter for a new hearing consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12

A-4720-18