**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2713-22

ANDREW PENDER,

     Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____

Submitted May 15, 2025 – Decided June 2, 2025

Before Judges Mawla and Walcott-Henderson.

On appeal from the New Jersey Department of Corrections.

Andrew Pender, appellant pro se.

Matthew J. Platkin, Attorney General, attorney for respondent (Janet Greenberg Cohen, Assistant Attorney General, of counsel; Leo R. Boerstoel, Deputy Attorney General, on the brief).

PER CURIAM

Andrew Pender, an inmate in New Jersey State Prison, appeals from a March 27, 2023 final agency decision of the Department of Corrections (DOC) upholding a finding of guilt as to various disciplinary charges incurred over a two-month period, following a hearing.  Pender challenges the sanctions imposed, arguing they are excessive, arbitrary, and capricious, and a violation of his due process rights under N.J.A.C. 10A:4-9.8(c).  Perceiving no merit to his arguments, we affirm.

On November 17, 2022, Pender was involved in a fight in the prison mess hall.  He was charged with violations under N.J.A.C. 10A:4-4.1(a) for prohibited acts *.004 (fighting with another person) and *.306 (conduct that disrupts or interferes with the security or orderly running of the facility).  According to Pender, "he admitted he was guilty of fighting and accepted responsibility for his actions," with respect to this charge.  Although initially charged on November 17, 2022, Pender's disciplinary hearing did not commence until February 2, 2023, seventy-seven days later.

Thereafter, Pender was involved in various other infractions resulting in additional charges mostly related to his disruptive behaviors, which are set forth in the following chart submitted by Pender with the State's consent.

A-2713-22

## CHART OF SANCTIONS

| Incident No. | Date of Incident | Date Adjudicated | Charge | RHU | LOCT | LORP | Phone | TV/Radio | Canteen | Tablet | Kiosk |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 11/17/22 | 2/02/23 | *.004 | 120 | 100 | 30 | | | 30 | | |
| 2 | 11/27/22 | 3/15/23 | *.256ᵃ | 90 | 60 | 30 | 180 | 30 | 30** | 30 | 30 |
| 3 | 11/30/22 | 3/15/23 | *.502ᵇ | 120 | 120 | 30 | 180 | 30 | 30** | 30 | 30 |
| 4 | 12/02/22 | 1/03/23 | *.803/*.002 | 300 | 300 | 30 | 300 | 300 | 30 | 30 | 30 |
| 5 | 12/03/22 | 1/03/23 | *.002 | 300 | | | 30 | 300 | 300 | 30 | |
| 6 | 1/11/23 | 2/02/23 | *.012 | 100 | 100 | | 100 | | | | |
| 7 | 1/15/223 | 2/02/23 | *.002 | 300 | 300 | 30 | 300 | | | | 30 |
| 8 | 1/19/23 | 2/02/23 | *.005 | 100 | 100 | | 100 | | | | |

### TOTAL AGGREGATE OF ALL SANCTIONS (by category)

| Incident No. | | Date of Incident | Date Adjudicated | RHU | LOCT | LORP | Phone | TV/Radio | Canteen | Tablet | Kiosk |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 1,430 | 1,080 | 180 | 1,460 | 660 | 150 | 90 | 120 |

**Bold** – Adjudicated by D.H.O. Morales
Regular – Adjudicated by D.H.O. Gonzales
** - Loss of Canteen "Lux Items" only. Still able to order necessities, i.e. personal hygiene, stationery and clothing.

---

ᵃ Two other charges: Engaging in a Group Demonstration (*.253), and Disrupting the Orderly Running of the Facility (*.306) were dismissed.
ᵇ Two other charges: Destruction of Gov't. Property (.152), and Disrupting the Orderly Running of the Facility (*.306) were dismissed.

After the November 17, 2022 charge, Pender was placed on "constant watch" for mental health monitoring but later cleared for the disciplinary hearing process to commence on December 20, 2022. The disciplinary hearings commenced on January 3, 2023, were adjourned until February 2, 2023, and concluded on March 15, 2023.

At the January 3, 2023 hearing, the hearing officer initially considered the following charges: *.253 (engaging in or encouraging a group demonstration or

work stoppage), *.256 (refusing to obey an order of any staff member), and *.306 (conduct that disrupts or interferes with the security or orderly running of the correctional facility) for his refusal to exit a recreation module and for encouraging other inmates to do the same. DOC did not pursue infractions *.253 and *.306. Due to delays in obtaining video evidence of the incident and to allow for confrontation with the arresting officers, the hearing was delayed until February 2, 2023. Pender was ultimately found guilty of violation *.256.

Prior to the start of the February hearing, on November 30, 2022, Pender was charged with violation *.502 (interfering with the taking of count) for locking his door with clothing and failing to respond to the routine inmate attendance count. He was found guilty of violating *.502 on March 15, 2023.

On the same day, Pender was also charged with violation *.152 (destroying, altering, or damaging government property or the property of another person), for destroying a unit phone in his cell. The first portion of the hearing occurred on January 3, 2023, and the second portion occurred on March 15, 2023, to allow DOC time to procure the video footage and adverse witnesses. Pender had initially requested a right to confront witnesses but later declined that right on March 15, 2023. He was found guilty of violation *.152.

4

On December 1, 2022, Pender refused to move to the rear of his housing unit, refused to respond to the routine inmate "count" and was blocking the view of his window. He was charged on that date with violation *.501 (failure to stand count). Following the hearing, Pender was found guilty of this charge.

On December 2, 2022, while was being brought into an interview room, Pender ran towards and attempted to attack mental-health doctors, resulting in a charge of violation *.803/*.002 (attempting to commit an assault). His hearing related to this charge was originally set for January 3, 2023, but was postponed until February 2, 2023, to allow for time to collect video footage and to grant his confrontation requests. He was ultimately found guilty of this prohibited act on February 2, 2023.

On December 3, 2022, Pender was being escorted by an officer from the nursing station when he struck the officer with his elbow and grabbed the officer's leg. He was subsequently charged with prohibited act *.002 (assaulting any person). The hearing on that charge also commenced on January 3, 2023, and was completed on February 2, 2023, after a continuation to allow for the collection and presentation of the video evidence and to consider Pender's request to confront adverse witnesses. Because the video supported the charge,

5

Pender's request for confrontation was denied. He was subsequently found guilty of this charge.

On January 11, 2023, two separate officers witnessed Pender throw a brown-and-yellow liquid onto an officer who was serving dinner and collecting trash, some of which ended up in the officer's mouth. He was charged with prohibited act *.012 (throwing bodily fluid at any person). Pender attended the hearing for one of the charges but not the other. At the hearing he attended, Pender requested video footage and confrontation. The hearing was delayed from February 2, 2023 to March 22, 2023, to permit Pender access to the video footage and witnesses.[1] DOC denied confrontation during the latter hearing, as the video footage supported the charge. The charges were combined, and Pender was found guilty.

On January 15, 2023, Pender grabbed a nurse's arm and attempted to pull her through the window, as she was serving him medication. Pender stated to the nurse "don't play me, b[****]" while laughing. He was charged with violation *.002 (assaulting any person). He refused to attend this hearing and was found guilty in absentia on February 2, 2023.

---

[1] The record reflects a dispute as to the hearing date. DOC's record states March 22, 2023, while the final agency decision reflects a hearing date of March 15, 2023.

Finally, on January 19, 2023, Pender participated in a video-recorded interview where he made explicit verbal threats towards staff, resulting in a new charge for violating prohibited act *.005, threatening another with bodily harm. Pender did not attend the hearing for this charge and was found guilty in absentia on February 2, 2023.

On March 20, 2023, Pender, through substituted counsel, submitted an administrative appeal, arguing: the delay in adjudicating the first charge warranted dismissal; the aggregate sanctions imposed on all the charges violated the Isolated Confinement Restriction Act (ICRA), N.J.S.A. 30:4-82.5 to 82.11; and he should be extended leniency due to his mental health issues.

On March 27, 2023, DOC issued its final agency decision upholding all findings and sanctions. In its written decision, DOC explained "[t]here was compliance with [N.J.A.C.] 10A provisions on inmate discipline[,] which prescribe procedural due process safeguards." The sanctions were appropriate given Pender's significant disciplinary history; delays were significantly impacted by Pender's "repeated violent and inappropriate actions around the times of his hearings"; "[f]acts were not misinterpreted in this case and substantial evidence was relied upon by the [h]earing [o]fficer." The DOC also concluded, "[t]here is no violation of [ICRA] as you are able to write family

7

[and] friends; stamps can be purchased even with [the] loss of luxury item[s from the] canteen, and you are still able to utilize the phone . . . [to contact the special investigation division] and your attorney." The written order further notes that Pender's mental health history was reviewed and considered. This appeal followed.

On November 14, 2024, we granted DOC's motion seeking a remand to correct procedural issues in the hearings previously conducted and to complete re-hearings. Upon remand, DOC allowed Pender "the opportunity to cross-examine the witnesses, or provide a more thorough reasoning in each specific instance for why confrontation is not possible"; new hearings for each charge during which they would endeavor to ensure valid confrontation requested are granted; reconsider all sanctions; and ensure the sanctions and any delays are properly explained in the record.

On rehearing, Pender pleaded guilty to charges of prohibited acts *.004 and *.012 (fighting with another person and throwing bodily fluid at another person, respectively). However, he entered no plea on the charge for prohibited act *.803/*.002 (attempting to commit an assault), declined to view the video documenting the incident, did not make any statement, and declined any

confrontation.  On these charges, the hearing officer found Pender guilty, but reduced his loss of phone, TV and radio privileges from 300 to 150 days.

Pender also did not enter a plea on the charge of prohibited act *.002 (assaulting any person) and again declined to review the video or to confront witnesses.  As to this charge, the hearing officer reduced his loss of phone, TV and radio privileges from 300 to 210 days.

DOC dismissed the remaining three charges for prohibited acts *.502, *.256, and *.005.  Thus, on rehearing, Pender was found guilty of five charges and his release date from the restorative housing unit was reduced from March 16, 2026 to July 1, 2024.

## I.

"The scope of our review of an agency decision is limited."  Mejia v. N.J. Dep't of Corr., 446 N.J. Super. 369, 376 (App. Div. 2016).  In reviewing an agency decision, we determine "(1) whether [it] conforms with relevant law; (2) whether [it] is supported by substantial credible evidence in the record; and (3) whether, in applying the law to the facts, the administrative agency clearly erred in reaching its conclusion."  Conley v. N.J. Dep't of Corr., 452 N.J. Super. 605, 613 (App. Div. 2018) (citing In re Stallworth, 208 N.J. 182, 194 (2011)).  "We will disturb an agency's adjudicatory decision only upon a finding that the

decision is 'arbitrary, capricious[,] or unreasonable,' or is unsupported 'by substantial credible evidence in the record as a whole.'" Blanchard v. N.J. Dep't of Corr., 461 N.J. Super. 231, 237-38 (App. Div. 2019) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)). The challenger of the agency decision bears the burden of proving the decision was "arbitrary, unreasonable[,] or capricious." In re M.M., 463 N.J. Super. 128, 136 (App. Div. 2020) (quoting McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002)). We are not bound by an agency's statutory interpretation or other legal determinations and review those de novo. Conley, 452 N.J. Super. at 613.

In an appeal from a final DOC decision in a prisoner disciplinary matter, we consider whether the record contains substantial evidence to support the decision the inmate committed the prohibited act. Blanchard, 461 N.J. Super. at 237-38; see also N.J.A.C. 10A:4-9.15(a) ("A finding of guilt at a disciplinary hearing shall be based upon substantial evidence."). "Substantial evidence has been defined alternatively as 'such evidence as a reasonable mind might accept as adequate to support a conclusion,' and 'evidence furnishing a reasonable basis for the agency's action.'" Blanchard, 461 N.J. Super. at 238 (quoting Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 192 (App. Div. 2010)).

When reviewing a prison disciplinary matter, we also consider whether DOC followed the regulations adopted to afford inmates procedural due process. See McDonald v. Pinchak, 139 N.J. 188, 194-95 (1995); Jacobs v. Stephens, 139 N.J. 212, 220-22 (1995). "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due [to] a defendant in such proceedings does not apply." Jenkins v. Fauver, 108 N.J. 239, 248-49 (1987). An inmate's more limited procedural rights, initially set forth in Avant v. Clifford,[2] are codified in a comprehensive set of regulations. See N.J.A.C. 10A:4-9.1 to -9.28. Those regulations "strike the proper balance between the security concerns of the prison, the need for swift and fair discipline, and the

---

[2] In Avant, our Supreme Court defined these protections, to include:

> (a) written notice of the claimed violations . . . ; (b) disclosure . . . of evidence . . . ; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body . . . members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons [for acting].

> 67 N.J. 496, 523 (1975) (omissions in original) (quoting Morrissey v. Brewer, 408 U.S. 471, 488-89 (1972)).

due-process rights of the inmates." Williams v. Dep't of Corr., 330 N.J. Super. 197, 203 (App. Div. 2000) (citing McDonald, 139 N.J. at 202).

Pender challenges the sanctions imposed by the hearing officer and upheld by DOC following the rehearing, arguing:  the hearing officer violated his due process rights by refusing to dismiss several charges after "egregious delays" without providing a statement of reasons for the delay in the record; imposed sanctions in violation of the legislative intent of ICRA; and the imposition of a combination of other sanctions (loss of phone, canteen and J-pay email) is excessive and draconian and violates ICRA because combined, they isolate him from all forms of communication, including communication with the courts.  He seeks vacatur of the hearing officer's determination of guilt and expungement of the "entire matter from this record."

ICRA provides,

> a.   The use of isolated confinement in this State's correctional facilities should be restricted to ensure the safe and humane operation of these facilities, consistent with the New Jersey Constitution, the laws and public policies of this State, the mission of the correctional system, evolving medical knowledge, and human rights standards of decency.
>
> b.   Isolated confinement should only be used when necessary, and should not be used against vulnerable populations or under conditions or for time periods that

12

foster psychological trauma, psychiatric disorders, or serious, long-term damage to an isolated person's brain.

c. The standards established in this act should apply to all persons detained in correctional facilities under the jurisdiction of this State or any subdivision, regardless of the civil or criminal nature of the charges against them.

d. Citing the devastating and lasting psychological consequences of solitary confinement on persons detained in correctional facilities, President Obama adopted reforms in January 2016 to reduce its use in federal correctional facilities, including banning restrictive housing for low-level offenders and juveniles; decreasing the maximum length of time an inmate may be held in restricted housing from 365 days to [sixty] days; and increasing time spent outside the cell for inmates held in restricted housing.

[N.J.S.A. 30:4-82.6.]

Isolated confinement is defined in ICRA as the

confinement of an inmate in a correctional facility, pursuant to disciplinary, administrative, protective, investigative, medical, or other classification, in a cell or similarly confined holding or living space, alone or with other inmates, for approximately [twenty] hours or more per day in a State correctional facility or [twenty-two] hours or more per day in a county correctional facility, with severely restricted activity, movement, and social interaction.

[N.J.S.A. 30:4-82.7.]

We reject Pender's due process arguments because as the record shows, he received notice of each charge and was afforded the assistance of a counsel substitute at the rehearing. Moreover, the record confirms that much of the delay in proceeding with the original hearing was due to Pender's repeated infractions—seven additional charges spanning a two-month period—his requests for time to confront witnesses, and the need to secure video evidence. Against this backdrop, we are satisfied Pender was afforded notice of the charges against him and the opportunity to be heard and to confront witnesses, if he so chose. Avant, 67 N.J. at 523. Thus, there was no violation of his due process rights.

We reject the argument the aggregate sanctions imposed by the hearing officer and upheld by DOC are egregious or draconian, as Pender claims, nor do we perceive any violation of ICRA. Pender makes no challenge to DOC's finding of guilt as to the charges against him, only that the aggregate sanctions imposed resulted in his isolation in violation of ICRA, which provides that an inmate shall not be placed in isolated confinement for more than twenty consecutive days, or more than thirty days during any sixty-day period.

However, Pender was not placed in solitary confinement. His claim is that by denying him phone privileges and lengthy TV and radio restrictions, and

placing him in vulnerable population pre-hearing adjudication for 108 consecutive days, he was in "de facto isolated confinement . . . for a time longer than the law allows" lacks merit.

Pender maintains his confinement far exceeded ICRA's temporal perimeters and was even more "egregious" given his serious mental illness. He seeks dismissal of all charges based on DOC's failure to adhere to the time limits prescribed in N.J.A.C. 10A:4-9.8, requiring inmates confined in prehearing disciplinary housing to receive a hearing within three days. We are not persuaded.

The record following the November 17, 2022 fighting incident shows DOC authorized Pender's placement in vulnerable population restorative housing for his protection. The placement order expressly provides that as "a member of a vulnerable population," Pender is "ineligible for [p]re-[h]earing [d]isciplinary housing." Contrary to Pender's assertions, he was not placed in disciplinary housing, thus, N.J.S.A. 10A:4-9.8(c) does not apply. Further, subsection (b) allows for reasonable postponements of disciplinary hearings, and there is no support for Pender's argument that dismissal of the charges is warranted based on the failure to conduct a hearing within seven days. N.J.S.A. 10A:4-9.8(b). As previously noted, several of the initial hearing dates were

15

adjourned as Pender continued to accumulate new charges and to obtain video evidence and testimony, some at his request. Moreover, adjournments are within the discretion of the hearing officer, N.J.A.C. 10A:4-9.9, and we discern no abuse of discretion in adjourning the disciplinary hearing to ensure the inclusion of relevant evidence.

Additionally, DOC specifically sought a remand to address deficiencies in the initial hearing with the express intention of: allowing Pender "the opportunity to cross-examine the witnesses, or provide a more thorough reasoning in each specific instance for why confrontation is not possible;" hold new hearings for each charge during which they would endeavor to ensure valid confrontation requests are granted; reconsider all sanctions; and ensure the sanctions and any delays, are properly explained in the record. And, although Pender did not appear at the rehearing, he was represented by a counsel substitute who provided a statement in support of Pender as to various charges, explaining his actions were likely due to his mental health distress.

Significantly, we note that following the rehearing, the hearing officer dismissed three charges *.256 and *.502, and *.005 (refusing to obey, interfering with the taking of counts, and threatening another with bodily harm), finding insufficient evidence to support these charges as no video was included in the

16

evidence. Accordingly, the aggregate sanctions of loss of phone, TV, and radio privileges were further reduced.

Lastly, addressing Pender's argument DOC violated the legislative intent of ICRA by placing him in isolation pending his disciplinary hearing, we note there is no dispute he had been classified as a vulnerable population inmate and confined following the November 17, 2022 fight in the mess hall. The record, however, does not support his contention that his confinement equates to solitary confinement in violation of ICRA, as he cannot show that his activities were "severely restricted" consistent with N.J.S.A. 30:4-82.7. In fact, Pender's records show that he was permitted to participate in various courses and activities that are not afforded to inmates in solitary confinement. Thus, we are not convinced DOC violated ICRA by classifying Pender as a vulnerable population inmate given his mental health diagnosis and repeated assaultive behaviors. Rather, the time spent in the restorative housing unit did not violate ICRA and was appropriately tied to his need for protection.

To the extent we have not addressed any other argument raised by Pender, it is because Pender did not first present the argument to DOC, despite his opportunity to do so at the initial hearing or subsequent rehearing. J.K. v. N.J. State Parole Bd., 247 N.J. 120, 138 n.6 (2021). The other reason is because the

argument does not have sufficient merit to warrant further discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-2713-22