**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2353-23

FARAD ANDREWS,

     Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____

Submitted November 13, 2025 – Decided January 30, 2026

Before Judges Gummer and Jacobs.

On appeal from the New Jersey Department of Corrections.

Farad Andrews, self-represented appellant.

Matthew J. Platkin, Attorney General, attorney for respondent (Janet Greenberg Cohen, Assistant Attorney General, of counsel; Azeem M. Chaudry, Deputy Attorney General, on the brief).

PER CURIAM

Farad Andrews, an inmate at a correctional facility, appeals from a January 16, 2024 final decision of the New Jersey Department of Corrections (DOC). The DOC imposed sanctions after finding Andrews guilty of prohibited acts *.002 ("assaulting any person") and *.306 ("conduct which disrupts or interferes with the security or orderly running of the correctional facility").[1] Andrews contends the disciplinary hearing officer who adjudicated the charge violated his due-process rights, displayed bias, and failed to follow certain aspects of the applicable administrative code, N.J.A.C. 10A:4-9.1 to -9.28. He further claims his counsel substitute provided ineffective assistance. Unpersuaded by those arguments, we affirm.

On December 14, 2023, an officer reported that Andrews had exposed himself to her. Responding to that report, other officers, including Sergeant Brian Ahearn and Officer Brian Arocho, arrived at Andrews's cell to escort him off the unit. According to Sergeant Ahearn, when Officer Arocho attempted to secure Andrews in handcuffs, Andrews became "non[-]compliant and combative." As described by Sergeant Ahearn and recorded on his body-worn camera, Andrews pulled away and "began assaulting [Officer] Arocho by

---

[1] "Prohibited acts preceded by an asterisk (*) are considered the most serious and result in the most severe sanctions." N.J.A.C. 10A:4-4.1(a).

punching towards his head." Officer Arocho responded with "closed handed strikes . . . to gain compliance and stop the assault." Sergeant Ahearn reported an emergency over his radio and deployed "one burst of OC in an attempt to stop the assault."[2] Because the OC spray was ineffective, Sergeant Ahearn used physical force to bring Andrews to the ground. Andrews continued to resist, but the officers eventually secured Andrews in handcuffs. Other officers subsequently escorted Andrews to a medical unit, where he refused physical and mental-health examinations. He was then moved to another location, where he refused to comply with a strip-search order. While awaiting "forced strip orders" in the company of officers, Andrews admitted to assaulting Officer Arocho.

Andrews was charged with prohibited act *.002, in violation of N.J.A.C. 10A:4-4.1(a)(1)(ii), and prohibited act *.306, in violation of N.J.A.C. 10A:4-4.1(a)(2)(xix). An officer served Andrews with the disciplinary reports setting forth the charges. The officer stated in the disciplinary reports that Andrews

---

[2] According to the DOC, OC spray or "[o]leoresin capsicum spray is a chemical irritant used as a safe and effective method to subdue inmates with minimal force, and is commonly referred to as 'pepper spray.'" See also Mejia v. N.J. Dep't of Corr., 446 N.J. Super. 369, 372 (App. Div. 2016) (describing the use of OC spray to subdue an inmate).

had been read his "use immunity" rights.[3] Andrews pleaded not guilty to the charges and requested and was granted the assistance of a counsel substitute.

A disciplinary hearing was initially scheduled to take place on December 20, 2023. Andrews did not submit a statement or ask to examine or cross-examine any witnesses. He requested "video evidence to support his innocence." The hearing was postponed to January 9, 2024, so that video footage from body-worn and unit cameras could be presented.

The hearing officer ultimately found Andrews guilty of both prohibited acts. The hearing officer imposed 300 days in the restorative housing unit, a 300-day loss of commissary privileges, and a thirty-day loss of other privileges.[4]

Andrews administratively appealed to the DOC the hearing officer's findings of guilt. On the appeal form, "misinterpretation of the facts" was checked; "violation of Standards" was not checked. On that form, Andrews contended the video footage supported only that he had "refused and failed to

---

[3] Pursuant to N.J.A.C. 10A:4-9.3, an "inmate shall be advised of the inmate's right to use immunity at any investigative interview and at the disciplinary hearing." Specifically, an inmate is told "that any statements made in connection with the disciplinary hearing or any evidence derived directly or indirectly from those statements shall not be used in any subsequent criminal proceeding."

[4] Pursuant to N.J.A.C. 10A:5-9.2, a restorative housing unit is "a structured, controlled environment where inmate behavior shall be closely monitored and documented by a team of custody and civilian staff."

4

comply wit[h] officers['] orders" and he "was then slammed and restrained."  He denied he had "assault[ed] staff" and asserted he "never threw a punch."  The DOC upheld the decision on January 16, finding:  "[t]here was compliance with Title 10A provision[s] on inmate discipline which prescribe procedural due process safeguards"; "there w[as] no misinterpretation of the facts"; and the decision "was based on substantial evidence."  The DOC also found the sanctions "were proportionate to the offense" and denied Andrews's request for leniency.  This appeal followed.

"Our review of an administrative agency's final determination is limited." Columbia Fruit Farms, Inc. v. Dep't of Cmty. Affs., 470 N.J. Super. 25, 36 (App. Div. 2021).  In reviewing an agency decision, we determine:  "1) whether the decision is consistent with the agency's governing law and policy; 2) whether the decision is supported by substantial evidence in the record; and 3) whether, in applying the law to the facts, the agency reached a decision that could be viewed as reasonable."  Id. at 37.  "We will disturb an agency's adjudicatory decision only upon a finding that the decision is 'arbitrary, capricious or unreasonable,' or is unsupported 'by substantial credible evidence in the record as a whole.'"  Blanchard v. N.J. Dep't of Corr., 461 N.J. Super. 231, 237-38 (App. Div. 2019) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80

(1980)); see also M.R. v. N.J. Dep't of Corr., 261 N.J. 322, 337 (2025). The challenger of the agency decision bears the burden of proving the decision was "arbitrary, unreasonable or capricious." In re M.M., 463 N.J. Super. 128, 136 (App. Div. 2020) (quoting McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002)). We are not bound by an agency's statutory interpretation or other legal determinations and review those de novo. Conley v. N.J. Dep't of Corr., 452 N.J. Super. 605, 613 (App. Div. 2018).

In an appeal from a final DOC decision in a prisoner disciplinary matter, we consider whether the record contains substantial evidence to support the decision the inmate committed the prohibited act. Blanchard, 461 N.J. Super. at 238-39; see also N.J.A.C. 10A:4-9.15(a) ("finding of guilt at a disciplinary hearing shall be based upon substantial evidence"). "Substantial evidence has been defined alternately as 'such evidence as a reasonable mind might accept as adequate to support a conclusion,' and 'evidence furnishing a reasonable basis for the agency's action.'" Blanchard, 461 N.J. Super. at 238 (quoting Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 192 (App. Div. 2010)).

We note at the outset that Andrews did not present in his administrative appeal many of the arguments he now raises in this appeal. The single argument raised in the administrative appeal that resulted in the final agency order under

review in this appeal was that the hearing officer had based her guilty findings on a "misinterpretation of the facts" and a misreading of the evidence. Andrews limited his appeal to that argument even though the appeal form gave him the option of presenting an argument based on a "violation of Standards" or "other" issues.

In general, "an issue may not be raised on appeal if not raised in the proceedings below." N.J. Dep't of Env't Prot. v. Huber, 213 N.J. 338, 372 (2013). On review of a trial court decision, "appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such presentation is available unless the questions so raised on appeal . . . concern matters of great public interest." Ricci v. Ricci, 448 N.J. Super. 546, 567 (App. Div. 2017) (quoting Zaman v. Felton, 219 N.J. 199, 226-27 (2014)).

That legal premise applies equally to appeals from final agency decisions. See In re Stream Encroachment Permit, 402 N.J. Super. 587, 602 (App. Div. 2008) ("Normally, we do not consider issues not raised below at an administrative hearing"). Our Supreme Court, however, has recognized that "constitutional issues arising in administrative law proceedings may be raised for the first time on appeal" even though "an administrative agency could and

would, where appropriate, address such issues." Huber, 213 N.J. at 372-73; see also In re Stream Encroachment Permit, 402 N.J. Super. at 602 (court considers issue not raised before the administrative agency because the issue was "one of public importance and . . . likely [to] arise in the future"). Because Andrews frames most of his arguments as being based on due-process violations, we consider them even though he did not raise them in his administrative appeal.

"[A]n inmate must be afforded a reasonable opportunity to defend a disciplinary charge." Williams v. Dep't of Corr., 330 N.J. Super. 197, 205 (App. Div. 2000). In Avant v. Clifford, 67 N.J. 496 (1975), the New Jersey Supreme Court "extended State due-process guarantees beyond the federal constitutional minimum" set forth in Wolff v. McDonnell, 418 U.S. 539, 556 (1974). McDonald v. Pinchak, 139 N.J. 188, 195 (1995). However, because prison disciplinary hearings are not criminal hearings, the full spectrum of rights typically afforded to criminal defendants do not apply. Avant, 67 N.J. at 522; see also Blanchard, 461 N.J. Super. at 240-41.

Thus, inmates are entitled to certain procedural protections before being subject to any disciplinary sanctions. Avant, 67 N.J. at 542. As codified in N.J.A.C. 10A:4-9.1 to -9.28, those protections include, but are not limited to: prior written notice of the charges, an impartial tribunal, a limited right to call

witnesses and present documentary evidence, a limited right to confront and cross-examine an adverse witness, and a right to a written statement of the evidence and the reasons for any sanctions imposed. Id. at 525-33; see also McDonald, 139 N.J. at 202 ("The current regulations . . . strike the proper balance between the security concerns of the prison, the need for swift and fair discipline, and the due process rights of the inmates."). Notably, however, due process necessitates "procedural protections as the particular situation demands[,] recognizing that not all situations calling for procedural safeguards require the same kind of procedure." Avant, 67 N.J. at 541.

Andrews claims his due-process rights were violated because he did not receive notification of use immunity pursuant to N.J.A.C. 10A:4-9.3. That assertion is belied by the record. Andrews acknowledges an officer served him with the disciplinary reports. Those reports stated Andrews had been read his "use immunity" rights. Moreover, "[t]he failure to give [notice of use immunity] by the investigating custody staff member shall not be grounds for dismissing the disciplinary report." Ibid. N.J.A.C. 10A:4-9.3 authorizes a hearing officer to "grant a postponement if it is determined that such failure [to notify of use immunity] has precluded the inmate from adequately preparing his or her

defense at the hearing." No postponement was requested. We perceive no due-process violation on that basis.

Andrews claims his due-process rights were violated because he personally was excluded from the disciplinary hearing. He does not assert the hearing officer excluded his counsel substitute, who signed both adjudication of disciplinary charge documents and acknowledged the information contained on the documents "accurately reflect[ed] what took place at the inmate disciplinary hearing." Pursuant to N.J.A.C. 10A:4-9.10(a), an inmate is entitled to attend a disciplinary hearing unless the proceeding involves "the necessary deliberations of the Disciplinary Hearing Officer" or if "correctional facility security would be jeopardized by the inmate's presence." If a hearing officer excludes an inmate from a hearing, "[t]he reasons for excluding [the] inmate . . . must be well documented in the record." N.J.A.C. 10A:4-9.10(b).

The record does not contain written documentation of the reasons for excluding Andrews from the hearing. Given the violent nature of the interaction at issue, the reasons for exclusion may have been obvious. Nevertheless, the hearing officer should have documented them in accordance with N.J.A.C. 10A:4-9.10(b). On the existing record, however, we perceive no due-process

10

violation in the decision to exclude Andrews personally from the hearing or in the hearing officer's failure to document the reasons for that exclusion.

Andrews contends his due-process rights were violated because the hearing officer was biased. His bias claim is contingent on his assertion that the hearing officer's findings of guilt were based on insufficient evidence. We disagree. Having reviewed the record, we are satisfied it contains substantial credible evidence that supports finding Andrews guilty of both prohibited acts. The video evidence and the numerous reports supported the determination that Andrews had committed an assault and engaged in disruptive behavior in violation of N.J.A.C. 10A:4-4.1(a)(1)(ii) and (a)(2)(xix). Accordingly, we reject Andrews's bias claim as well as any assertion a lack of substantial credible evidence rendered the DOC's final agency decision arbitrary, capricious, or unreasonable.

Andrews faults the hearing officer for committing other purported violations of the applicable administrative code. He contends the hearing officer failed to specify the evidence on which she had relied in rendering her decisions pursuant to N.J.A.C. 10A:4-9.15(b). But, again, he does not dispute that reports and video recordings were submitted in evidence; he challenges whether that evidence was sufficient to support the findings of guilt. Under those

circumstances, the purported code violation does not support reversing the DOC's final decision.

Andrews argues the hearing officer's decisions were ambiguous and should be modified pursuant to N.J.A.C. 10A:4-9.16(a). He bases that argument on the hearing officer's reference to prohibited act *.004 on the adjudication report for the *.306 charge. Prohibited act *.004 ("fighting with another person") is a violation of N.J.A.C. 10A:4-4.1(a)(2)(i). On the *.306 adjudication report, the hearing officer initially wrote that the sanctions for the prohibited act *.306 charge would be "combine[d] with" the sanctions for the prohibited act *.004 charge, but the reference to *.004 was crossed out and replaced with a reference to *.002. The record makes clear the hearing officer and Andrews understood he had been charged with and found guilty of committing prohibited act *.002, not prohibited act *.004. The hearing officer's minor correction on the adjudication report for prohibited act *.306 does not support any modification under N.J.A.C. 10A:4-9.16(a).

Andrews contends the hearing officer failed to follow N.J.A.C. 10A:4-9.13 regarding his purported self-defense argument. N.J.A.C. 10A:4-9.13(f) permits an inmate "to raise self-defense to a prohibited act involving the use of force among inmates" and makes the inmate "responsible for presenting

supporting evidence." The prohibited acts at issue did not involve the "use of force among inmates," and Andrews did not present any evidence that supported a self-defense claim. Thus, Andrews failed to establish a violation of N.J.A.C. 10A:4-9.13.

Finally, we address Andrews's claim his counsel substitute rendered ineffective assistance. In addressing that claim, we recognize the right to the assistance of counsel substitute in an inmate disciplinary hearing is not equivalent to the constitutional right of counsel in non-institutional proceedings. Compare Strickland v. Washington, 466 U.S. 668, 684-98 (1984) (describing the standard for effective assistance of counsel guaranteed by the Sixth Amendment), with Avant, 67 N.J. at 529 (stating that, when appropriate, a "hearing officer may choose a sufficiently competent staff member or inmate to provide assistance" (emphasis added)). Without charting the precise boundaries of the minimal standard of competence required of a counsel substitute, we conclude Andrews failed to demonstrate ineffective assistance.

Andrews claims his counsel substitute was ineffective in failing to "properly submit" his statement about "exactly what occurred on December 14th, 2023." However, the record demonstrates Andrews's position was clear to the hearing officer and the DOC. The hearing officer stated on the adjudication

13

reports that Andrews had denied committing the charged offenses. The administrative appeal document set forth Andrews's view of the December 14 incident: "he did not assault staff," the video footage supported "only [that he had] refused and failed to comply wit[h] officers['] orders"; he "was then slammed and restrained"; and he "never threw a punch." Considering that statement along with the documentary and video-tape evidence, the DOC upheld the hearing officer's decision. That record does not demonstrate ineffective assistance. See Strickland, 466 U.S. at 694 (requiring a defendant to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

Because Andrews received all the process he was due and because the DOC's decision was supported by substantial credible evidence, we affirm the DOC's January 16, 2024 final decision.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

14